**NEW AMSTERDAM CASUALTY CO. v. COL-LINS.  (No. 8884.)\***

(Court of Civil Appeals of Texas.  Galveston.
Nov. 18, 1926.  Rehearing Denied
Dec. 16, 1926.)

Master and servant ⬅373—Shooting by fellow
employee held not compensable "injury" (Rev.
St. 1925, art. 8309, subd. 2).

Employee, receiving gunshot wound while
on employer's premises from fellow employee
whom he had previously beaten in fist fight and
who threatened him, *held* not entitled to com-
pensation, under Rev. St. 1925, art. 8309, subd.
2, where shot was not directed at him as an
employee or because of his employment.

Appeal from District Court, Harris Coun-
ty; Chas. E. Ashe, Judge.

Proceeding under the Workmen's Compen-
sation Act by B. R. Collins, employee against
the New Amsterdam Casualty Company, in-
surer.  The employee was denied compensa-
tion by the Industrial Accident Board, and he
brought action against the insurer in the dis-
trict court.  Judgment for the employee, and
the insurer appeals.  Reversed and rendered.

Hunt & Teagle, of Houston, for appellant.
Maurice Hirsch, Ben J. Brown, and Allen
Hannay, all of Houston, for appellee.

GRAVES, J.  The appellee, denied compen-
sation by the Industrial Accident Board for
injuries resulting from a gunshot wound,
was, pursuant to a jury's verdict on special
issues awarded a lump sum recovery therefor
by the district court, to which in proper time
and manner he had resorted upon this state
of undisputed facts:

The appellee and Red Roberts were fellow
employees on an oil lease of the Inca Produc-
tion Company at Goose Creek, Tex., the for-
mer's work being as a night man on or about
the drilling rig, the latter being the day fire-
man, whose duty it was to take care of the
boilers on the lease; just after Roberts had
freshly painted one of these boilers, some one
of the company's employees had smeared it
up by wiping his muddy, oily gloves upon it,
the practice or custom of the men working on
the lease being to so wipe their wet, soiled
gloves on the hot steam lines or boilers that
might be at hand; Roberts became enraged
at his fellow employees over this occurrence,
and, on the same evening at about 6:40 at a
time when the night shift was on duty, after
quitting his own work about 6, went into the
dressing room of their employer on the prop-
erty which was used in common by the em-
ployees, and in violent, abusive and threaten-
ing terms, accused all of those in there, includ-
ing the appellee, of having done the act, first
so addressing an employee by the name of
Schultz (or Shook), next Meadows, and last

Collins, the appellee; each of these men in turn
denied the accusation, whereupon Roberts
then walked over to where Collins was stoop-
ing down, and, after again inquiring of him
whether or not he was sure he had not wiped
his hands on the boiler, made the further
charge that Collins was wearing his under-
clothing, jerking at the top of the latter's B.
V. D.'s, and saying, "What are you doing
with my B. V. D.'s on?"

Roberts thus being the aggressor, a fist
fight between the two then immediately en-
sued, Collins getting Roberts down, beating
him in the face, and getting the best of him,
but not perceptibly injuring him; after this
encounter, Roberts left the lease, stating to
Collins:

"Young man, mark my words, you will regret
what you have done," and, "Remember what
you have done."

Shortly thereafter, the son of Red Roberts
came on the drilling rig, and, after discussing
this fight with members of the drilling rig,
left with the remark:

"Well, if it is like you fellows say it is, I don't
blame you."

On the same night about 30 minutes later,
or just before 8 o'clock, both the Robertses re-
turned to the lease, the father in the mean-
time having changed his clothes and procured
a pistol.  Collins was then standing on top of
the pump cleaning some light bulbs.  No re-
mark was passed between him and either of
the Robertses, but the younger Roberts im-
mediately jerked Collins from the pump to
the floor of the drilling rig, the latter being
dazed by the fall.  At the time of this fight,
Collins weighed about 125 pounds, the young-
er Roberts being a big man and weighing
about 180 pounds.  In the struggle which fol-
lowed, the two men fell from the rig, Collins
landing on top.  The elder Roberts then drew
his gun, and after striking Collins in the back
of the head with it, shot him in the eye, in-
flicting the injuries complained of.

In our opinion, the injury thus shown was
not compensable under our Employer's Lia-
bility Act; the relevant part of that statute
is as follows:

"The term 'injury sustained in the course of
employment,' as used in this law, shall not in-
clude:
"2. An injury caused by an act of a third per-
son intended to injure the employee because of
reasons personal to him and not directed against
him as an employee, or because of his employ-
ment."  Texas Statutes 1925, article 8309.

The statute itself thus explicitly declares
that no recovery may be had where the in-
jury producing act of a third person is not di-
rected against the claimant as an employee,
or because of his employment, but is intended
by its perpetrator to injure him as an indi-

vidual because of some personal feeling toward or resentment against him. That, as we understand it, was what the court meant in construing this provision in Vivier v. Lumbermen's Exchange et al. (Tex. Com. App.) 250 S. W. 417. In the face of this positive exclusion from that classification of such a specified act of a third person, it would seem profitless to consider what under another sort of case would constitute an "injury sustained in the course of employment"; for that reason the Behnken Case (Tex. Civ. App.) 226 S. W. 154, and 112 Tex. 103, 246 S. W. 72, 28 A. L. R. 1402, with its definitions of when an injury "has to do with, and arises out of, the work or business of the employer" is not thought to be analogous here.

Who can say that the pistol shot here—the act of a third person—was directed against Collins either as an employee of the Inca Production Company, or because of that employment? Indeed, who can say that it was not directed against him solely because of the rankling of rage toward him personally? It was, of course, intended to injure him, but clearly, the firing of it was not inspired by, nor did his employment sustain any causal relation to it, the unmistakable incentive being to avenge the former whipping the elder Roberts had himself received at Collins' hands and to prevent an apparently impending one for his son, also. If the son, who presumably was not an employee of the production company instead of the father, had fired the shot, the circumstances otherwise being precisely the same, no difficulty appears in seeing that the employment of the appellee would have had nothing to do with it; nothing antecedent about the matter could have actuated the boy except resentment over the beating Collins had given his father. The fact of the father's having fired the shot himself does not it seems to us, make the situation different; there was no such causal connection between the individual act of his and the service of the Inca Production Company as metamorphosed the resulting injury to Collins from one caused by Red Roberts' feeling against him personally into one "directed against him as the employee, or because of his employment." How could there have been? It occurred well-nigh two hours after he had quit his own work for the company, which itself was wholly distinct from that of Collins, and was in direct execution of the threat he had made against Collins because of the latter's having so whipped him at their prior encounter. Of course, it may not be properly said that the threat arose out of or had its foundation in the employment. All that must be conceded in this connection is that the smearing of the boiler furnished the occasion for Roberts' having gotten mad in the first instance at his fellow employees, in general, and that it, together with his further conceiving the idea that Collins was wearing his underclothing, probably concentrated that anger upon Collins, in particular. It seems a far cry from this to concluding that his subsequent act in firing the pistol after he had himself been physically chastized by Collins and his son also seemed at the very moment about to be so visited, was directed against Collins as an employee or because of his employment.

The appellee relies in support of the judgment upon McClure v. Georgia Casualty Company (Tex. Com. App.) 251 S. W. 800. That case, while seeming to extend to the verge the liberal construction the Compensation Act is entitled to in the effort to attain the Legislature's objective in passing it, appears to be distinguishable from the one at bar in this: there the employees directly engaged in the difficulty were the day and night foremen, respectively; they got into a dispute about the night foreman not coming to work in time, and this brought on the fight in which a third person—present at the inception of the matter, and a brother of one of the others—intervened and inflicted the injury; the record fails to disclose whether or not this brother was himself an employee, but inferentially he was; the original participants were fellow employees, the altercation occurred on the plant over the method or manner of doing the work, and at a time when these two, at least, in the intervener's presence, were engaged in the actual service of their common employer. Because of these coincident circumstances, the court regarded "the unlawful and violent blow" struck by the intervening brother as part and parcel of the original assault. There was no such proximity in time, occurrence, or relationship here, as the statement of the facts has disclosed, hence this no less unlawful and violent act may not properly be regarded as part and parcel of the former difficulty between its perpetrator and his victim; if it could be then so might every injury to one of the participants—whether inflicted by the other or not—that followed the next hour, day, or week, in consequence of any dispute between two employees over matters in any way incident to the business, occurring while they were on the employer's premises, but not actually engaged in their several duties.

Under these conclusions, the jury's findings become immaterial and the recovery based upon them cannot stand; the trial court's judgment will therefore be reversed, and the cause will be determined in appellant's favor.

Reversed and rendered.