## RICHARDSON v. TEXAS EMPLOYERS' INS. ASS'N.

### No. 2190.

Court of Civil Appeals of Texas. Beaumont.
Feb. 19, 1932.

Rehearing Denied Feb. 24, 1932.

Howell & Howell, of Beaumont, for appellant.

D. C. Marcus and A. L. Calhoun, both of Beaumont, for appellee.

O'QUINN, J.

We shall refer to appellant as plaintiff and appellee as defendant; that being their status in the court below.

Plaintiff filed suit in the district court of Jefferson county to set aside an award of the Industrial Accident Board denying her compensation for which she had made claim for the death of her husband, Albert Richardson.

Judgment was against her, and she brings this appeal.

In her petition, plaintiff alleged that her deceased husband, Albert Richardson, about September 15, 1930, while in the course of his employment as an employee of the Broussard-Warfield Company, in Jefferson county, Tex., received an injury which resulted in his death, and that said injury originated in and arose out of his employment; that she duly gave proper notice of said injury and timely filed claim for compensation with the Industrial Accident Board of the state of Texas; that said board, on January 16, 1931, made its final order and decree; and that plaintiff duly gave notice of her unwillingness to abide by said decree, and within twenty days after giving said notice she filed this suit in the district court of Jefferson county to set aside said award. She further alleged that at the time her deceased husband received his injury, his said employer, Broussard-Warfield Company, was a subscriber under the Employers' Liability Act of Texas (Vernon's Ann. Civ. St. art. 8306 et seq.) and that defendant, Texas Employers' Insurance Association, carried such insurance. She further alleged that her deceased husband received his injury by being accidentally struck with a piece of iron by one Dave Williams, a fellow workman, and that the transaction in which her husband was injured was the outgrowth of an incident occurring in the employment previously, and was brought about by the peculiar working conditions created by said employer, and that deceased took no part in the jesting or horseplay, and was at the usual place of work preparing to commence the day's labor when he sustained his injury. She alleged that deceased's wages were $4 per day, and that said sum was the usual and customary wages for employees in the same or similar work for said Broussard-Warfield Company, for and during the year immediately preceding the said fatal injury. She alleged that she was entitled to compensation in a lump sum, prayed that the award of the Industrial Accident Board be set aside, and that she have judgment for compensation at the rate of $13.85 per week for a period of 360 weeks, payable in a lump sum discounted at 6 per cent., and for costs.

Defendant answered by general demurrer, special exceptions, general denial, and specially that the injury to deceased was not received in the course of his employment, because said injuries were caused (a) by the act of a third person intending to injure deceased because of reasons personal to him and not directed against him as an employee or because of his employment; (b) in the alternative, that such injuries were received as the result and outgrowth of horseplay between deceased and one Dave Williams, in which deceased was the aggressor; and (c) in the alternative, that the injury to deceased was caused by his willful intention and attempt to unlawfully injure another person, to wit, Dave Williams.

At the close of plaintiff's evidence, defendant moved for an instructed verdict, which was granted, and judgment entered in favor of defendant, and that plaintiff take nothing by her suit. Motion for a new trial was overruled, and plaintiff has appealed.

Plaintiff presents several assignments of error, but we shall discuss only the fifth. It reads: "There being testimony to the effect that the incident in which deceased was injured had its inception in horse-play and that Williams was the instigator thereof and the aggressor throughout the entire transaction, and that the deceased, if any part he took in same, was an unwilling participant and acted only to ward off a friendly attack, then the trial court was in error in failing and refusing to hold that the deceased's injury was sustained in and arose out of his employment."

The record discloses: That the Broussard-Warfield Company was engaged in paving streets under a contract with the city of Beaumont, and had various negro employees, thirty-five or forty, including Albert Richardson, deceased, and that the men were allowed from fifteen to thirty minutes at the noon hour for lunch. That the men, or at least the most of them, carried their lunch with them and ate at the point of work. This was not required of them by their employer. The day before the injury occurred, one of the lunches disappeared—was stolen—and one of the men accused deceased of stealing the lunch. The company had a truck that it sent out to pick up workers and carry them to the place of work on mornings. Deceased usually went on this truck, but on this morning he did not do so, but was at the place of work when the truck arrived. A negro by the name of Dave Williams was working in this crew of men on the same job. On the morning of the injury he was on the truck going to work. When the truck got near the place of work, Dave Williams said to another worker, Ben Taylor, "Yonder is Sam (referring to deceased); call him 'Lunch Sam.'" Taylor refused. Williams then said to David Aikins, another member of the crew, and who was nicknamed "Black Spot," "Well, Black Spot will call him that," to which "Black Spot" (Aikins) replied, "No, I won't; you got a mouth; if you want him called anything you call him." When Williams got down off of the truck he walked around and said, "Hello, Lunch Sam," talking to deceased. Deceased said nothing, and Williams repeated, "Hello, Lunch Sam." Then deceased said, "I done told you to leave that mess alone; you are going to keep on until somebody gets hurt about that mess." Deceased then walked to the truck and picked up a piece of iron called a "nose rail pin" about 18 inches long. Williams walked around the truck, and then deceased threw

the piece of iron back on the truck and walked out to the edge of the street and pulled out his pocketbook and said, "I'm got money enough to pay for a gang of lunches." Deceased then pulled three $1 bills and a $10 bill out of his pocketbook and repeated the statement that he had money to pay for a gang of lunches. Williams at this juncture walked back by deceased, and deceased kicked him on the leg and 'said, "I'm got money enough to pay for a gang of lunches." When deceased kicked Williams, Williams walked to the truck and picked up the piece of iron, called a "nose rail pin," and said to deceased, "What did you kick me for?" to which deceased replied, "You didn't thought I was going to kick you," when Williams walked up to deceased facing him and said, "What did you kick me for?" and deceased again replied, "You didn't thought I was going to kick you," and at this time Williams struck deceased on the head with the iron, from which he died in about two and a half hours. Williams testified that the reason that he called deceased "Lunch Sam" was because some one lost their lunch the day before and accused Sam of getting it. He said that when deceased showed his money that he (Williams) said "that ain't any money," and turned to start off, and deceased kicked him. He testified that he did not intend to hit deceased—that he thought deceased would dodge. Said he was not mad, just kidding him—playing with him. He said he was tried for murder and was given six months in jail. He said he would not have hit the deceased if deceased had not kicked him. It was agreed that 6 per cent. discount applied to any lump sum recovery that might be awarded plaintiff, and that $3.50 was deceased's average daily wage. We think the above is a sufficient statement of the facts.

As shown by the assignment of error, supra, plaintiff contends that she should have had judgment for compensation because her deceased husband was, at the time of his injuries, in the discharge of his duty to his master, and that his injury grew out of horseplay, exercised by another employee, in which deceased was not a participant or was an unwilling participant, and acted only to ward off a friendly attack by his coemployee.

In reply to this contention, defendant, by its counter propositions, says (a) that the evidence does not support appellant's statement that deceased was injured in an attempt to ward off a friendly attack of his co-worker, Williams, or that deceased unwillingly took part in the horseplay between Williams and himself, but to the contrary shows that deceased attacked Williams by kicking him before Williams struck deceased, and deceased was thus an active and willing participant therein; and (b) that the evidence shows that, if deceased, on said occasion, was ever in the course of his employment, he had turned aside from same, and had engaged in horseplay, or a personal quarrel with Williams, a third party, and that the injury resulted solely from the horseplay or quarrel, and therefore was not compensable.

■ It is not believed that the injury arising and occurring as it did grew out of or was caused by any hazard inherent in the employment. And it would be rather a strain on one's credulity to believe the occurrence between the deceased and his coemployee Williams was not entirely a personal matter between them. A lunch is stolen, and deceased is accused of being the thief. Williams urges several of the other employees to call deceased "Lunch Sam," a renewal of the theft charge. They refuse, and tell Williams that if he wants deceased so called to do so himself. Williams repeatedly calls deceased "Lunch Sam," thus casting the theft accusation repeatedly in the face of deceased. Finally deceased warns Williams that he (deceased) had already told him (Williams) that he was going to keep on until somebody got hurt "about that mess," and picked up an iron pin. Williams then walks off, and deceased throws the iron pin back on the truck and produces $13 in money, and says he can buy the whole gang a lunch, showing that it was not necessary for him to steal his fellow worker's lunch. Then Williams walked by deceased and deceased kicked him. Williams asked deceased why he kicked him, and gets the iron pin off of the truck and facing deceased again asked why deceased kicked him, when deceased replied, "You didn't thought I was going to kick you," and Williams, who was then in striking distance of and facing deceased, struck him with the iron pin, killing him. It seems to us that the only reasonable deduction that could be drawn from these undisputed facts is that the injury was caused by the act of a third person intended to injure the deceased, because of reasons personal to him and not directed against him as an employee, or because of his employment.

■■ However, while appellee pleaded that the injury received by deceased was not compensable because it was caused by the act of a third person intended to injure deceased because of reasons personal to him and not directed against him as an employee or because of his employment, and in the alternative that such injuries were received by deceased as the result and outgrowth of horseplay between deceased and Williams in which deceased was the aggressor, still, in its brief and oral argument in submission, defendant says the injury was most probably received as the result of horseplay, and insists that the undisputed evidence shows that deceased not only willingly engaged in such horseplay, but was the aggressor, having kicked Williams before Williams ever made any attempt to hit deceased. The facts are as above stated. They show that deceased did voluntarily kick Williams before Williams had

picked up the iron, or had made any attempt to hit deceased. There are two well-established lines of decisions relative to the right of an injured employee to compensation for an injury received in horseplay—one denying the right to compensation where the injury was received in horseplay, regardless of whether the injured employee took part in same or not; the other that the injured employee is entitled to compensation for an injury received in horseplay where he took no part in same. Cassell v. United States Fidelity & Guaranty Co., 115 Tex. 371, 283 S. W. 127, 46 A. L. R. 1137. The rule that an employee is entitled to compensation for an injury received in horseplay where he does not participate in same is the rule in Texas.. Cassell v. United States Fidelity & Guaranty Co., 115 Tex. 371, 283 S. W. 127, 46 A. L. R. 1137; United States Fidelity & Guaranty Co. v. Rochester, 115 Tex. 404, 283 S. W. 135; United States Casualty Co. v. Hardie (Tex. Com. App.) 299 S. W. 871. Plaintiff earnestly insists that this rule does not apply, for, it is said, deceased, if he took any part in the horseplay, did so unwillingly, and was warding off a friendly attack by his coemployee Williams. The undisputed evidence does not support, but denies, this contention. Deceased actively participated in the horseplay, if such it was, in fact commenced same by voluntarily kicking Williams before Williams made any attempt to strike deceased; it is clear that Williams would not have struck deceased had not deceased first kicked Williams. This act of deceased's was a voluntary turning aside from his employment by inviting the difficulty and willingly engaging therein, and was not in the furtherance of any duty he owed to his employer. United States Casualty Co. v. Hardie (Tex. Com. App.) 299 S. W. 871, 874. See Chambers v. Union Oil Co., 199 N. C. 28, 153 S. E. 594, 596; Salvatore Leonbruno v. Champlain Silk Mills, 229 N. Y. 470, 128 N. E. 711, 13 A. L. R. 522 (note, page 540, where numerous cases are cited). What we have said disposes of the case, and the other assignments need not be discussed.

The judgment should be affirmed, and it is so ordered.

Affirmed.