### COMMERCIAL STANDARD INS. CO. v. AUSTIN et al.

#### No. 3461.

Court of Civil Appeals of Texas. Beaumont.

May 19, 1939.

Rehearing Denied May 31, 1939.

Manry & Cochran, of Livingston, and Sewell, Taylor, Morris & Garwood, of Houston, for appellant.

V. A. Collins, of Livingston, for appellees.

WALKER, Chief Justice.

This is a Workmen's Compensation case, prosecuted by appellant, Commercial Standard Insurance Company, the compensation insurance carrier, from an adverse award of the Industrial Accident Board in favor of appellees, Barbara Austin and Arthur Austin, Jr., the alleged beneficiaries. Arthur Austin, who was killed on the 6th day of April, 1937, by Slim Parker, was the employee, the husband of Barbara Austin and the father of Arthur Austin, Jr. Long Leaf Lumber Company was the employer. On the verdict of the jury, judgment was for claimants, to be paid in a lump sum. The appeal, duly prosecuted by appellant from the judgment of the lower court, presents the following points:

■ Appellant contends that it was entitled to an instructed verdict on the ground that Arthur Austin was not killed in the course of his employment. The point is that Arthur Austin's death "did not result from any risk or hazard incidental to his employment, but solely from causes set in motion by his own deliberate misconduct in initiating trouble with 'Slim' Parker, for personal reasons, by ramming his boat into that occupied by 'Slim' Parker, and by making a felonious assault upon Parker"; and further that "Slim Parker intended to injure Arthur Austin because of reasons personal to him and not directed against him as an employee or because of his employment."

The evidence raised the issue of injury "in the course of employment", and denies appellant's further contention that the finding of the jury on this issue was without support in the evidence and against the overwhelming weight and preponderance of the evidence. Arthur Austin, Slim Parker, and other employees, all negroes, were engaged in "raising up" saw logs from the bottom of the employer's pond. The logs were "fished" from the bottom of the pond and loaded on boats, and unloaded from the boats by the use of a chain. In addition to a daily wage, these men were paid extra compensation based upon the number of logs recovered by them from the bottom of the pond. The employees, for their own convenience and regulation, made the following rule, which was regularly observed by them in doing their work, as testified to by Dewey Williams: "Q. You have testified on direct examination that it was Arthur Austin's time to get in there; that was just your idea about it? A. No, Sir, that was their rules; the man that got loaded first had the first right to the chain, don't care if the other boat didn't lack but one log in being loaded; that was the rules of the pond. If I was loaded and was way back in the middle of the pond and you were right up to the chain and you wasn't loaded, and if I whistled, it was my time to the chain."

This witness testified that, on the morning of April 6, 1937, Slim Parker violated the rule by trying to push his boat ahead of Arthur and out of his turn, for the purpose of having his logs unloaded ahead of Arthur's logs. Arthur, in resentment of this act by Slim, threw his pole at him—the pole used by him in raising the logs from the bottom of the lake. About that time the foreman came up and was told what Slim had done, that it was Arthur's time at the chain and Slim had tried to take it away from him. When the foreman learned these facts, he discharged Slim. Slim left immediately but returned in about an hour with his gun and, without renewing the controversy with Arthur, shot and killed him. On the undisputed facts, Arthur was in the discharge of the duties of his employment when he was killed, and the evidence clearly raised the issue that Slim killed him as the result of a controversy that grew out of their employment. In fact, there was no controverting testimony on that issue. The evidence supported the verdict of the jury. Consolidated Underwriters v. Saxon, Tex.Civ. App., 250 S.W. 447; McClure v. Georgia Casualty Co., Tex.Com.App., 251 S.W. 800; Traders & General Ins. Co. v. Mills, Tex.Civ.App., 108 S.W.2d 219; United States Casualty Co. v. Hardie, Tex.Com. App., 299 S.W. 871; Lumbermen's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S.W. 72, 28 A.L.R. 1402; Travelers' Ins. Co. v. Culpepper, Tex.Civ.App., 82 S.W.2d 1054.

In defining to the jury the term, "injuries sustained in the course of employment," the court used the language of the statute. There was no fact in this case requiring an extension of, or addition to, the statutory definition.

The evidence did not raise the issue that Arthur Austin's death was brought about as the result of his attempt to "unlawfully injure Slim Parker." Arthur was not

making any assault on Slim, nor was he threatening to injure him at the time he was killed; at that time Slim had no reason to believe that his life was in danger from anything Arthur was doing, or threatening to do; and he was under no appearance of danger, viewed even from his standpoint.

■ Appellant contends further that it was entitled to an instructed verdict on the ground that there was no evidence to show that Barbara Austin was the wife of Arthur Austin at the time of his death; and on that issue that the court erred in excluding her testimony to the effect that, at the time of the death of Arthur Austin, she was the common-law wife of another man. It was shown without controversy, that on authority of a license lawfully issued on the 14th day of December, 1936, Barbara was married to Arthur Austin on the 24th day of December, 1936, and that by virtue of this marriage she was living with him at the time of his death, claiming to be his lawful wife. She testified that before her marriage to Arthur, she lived two or three years with another man, on an agreement to live together as man and wife, and that they lived together and associated with their friends as man and wife; but her testimony was also to the effect that when she made this contract with that man, and entered into that relation with him, he told her he had a living wife and that he would marry her as soon as he could get a divorce. Her testimony was all the evidence on that issue.

The testimony of Barbara did not make out a prima facie case of a common-law marriage. It was merely to the effect that she entered into a contract with this other man to live with him as his wife, on his promise that he would marry her as soon as he could get a divorce. Until he was divorced, they could not enter into a common-law marriage; the evidence did not show that he was ever divorced. Pen. Code, Art. 490; United States Fidelity & Guaranty Co. v. Henderson, Tex.Civ.App., 53 S.W.2d 811; Fowler v. Texas Exploration Co., Tex.Civ.App., 290 S.W. 818; Walker v. Walker's Estate, Tex.Civ.App., 136 S.W. 1145; Consolidated Underwriters v. Kelly, Tex.Com.App., 15 S.W.2d 229; Id., Tex.Civ.App., 300 S.W. 981.

■ The evidence established the fact that appellee, Arthur Austin, Jr., was a bastard son of Arthur Austin, the employee; as such he did not have a compensable interest in the life of his father. When that fact was developed on the trial, Barbara assigned to her step-son a one-half interest in the compensation in controversy, which was duly made a part of the record. The assignment supports the judgment of the court, awarding Arthur Austin, Jr. a one-half interest in the compensation. The legality of assignments of this nature was sustained by this court in Traders & General Ins. Co. v. Boysen, 123 S.W.2d 1016.

■■ The court did not err in overruling appellant's plea that James Alston was a necessary party to this litigation. The point made is that the evidence raised the issue that James was a son of Arthur Austin, deceased, born to him in lawful wedlock, and that James Alston, an interested party under the Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq. was not before the Board when it made its final award, and was not a party to this suit. The claim for compensation filed with the Industrial Accident Board by appellees, in the form prescribed by law, gave the Board full jurisdiction to determine all issues of fact and law arising on the claim, and brought before the Board all persons interested in the claim, including James Alston. Traders & General Ins. Co. v. Boysen, supra. At the time the Board made its award, it knew of the James Alston claim; the claim was contested before the Board, both by appellees and by appellant, and the final award was made only in favor of appellees. All the evidence was to the effect that James Alston had no compensable interest in the life of the deceased. At one time Arthur Austin was married to the mother of James Alston, and she testified that James was born while she was married to Arthur. But her testimony as a whole affirmatively denied that statement. It was shown by the court records that James Alston's mother was divorced from Arthur on the 28th day of June, 1916; she married Arthur Knox on the 15th day of December, 1917. She testified that James was born on the 26th day of November, 1918. If James was a son of Arthur, he was begotten at a time when his mother was the wife of Arthur Knox and was, therefore, a bastard, without a compensable interest in the life of his father.

■ The court did not err in permitting the mother to testify to the date of the birth of her son, though the effect of her

testimony was to make him a bastard. Appellant offered her as a witness and had her testify that he was born while she was married to Arthur Austin. Clearly, the testimony of the date of his birth was admissible.

By propositions 19 to 23, inclusive, appellant complains of the argument of appellees' counsel. It would serve no useful purpose to bring this argument forward in the opinion. The argument was not subject to appellant's exceptions.

The judgment of the lower court is affirmed.