## CONSOLIDATED UNDERWRITERS v. ADAMS et al.

### No. 5472.

Court of Civil Appeals of Texas. Texarkana.

April 5, 1940.

Rehearing Denied May 2, 1940.

222

C. A. Lord, of Beaumont, for appellant.

Jones & Jones, of Marshall, J. E. Smith, of Longview, and Sam T. Holt, of Carthage, for appellees.

HALL, Justice.

This is a compensation case arising from the death of J. B. Adams at the hands of a fellow-workman while employed by the Sabine Basket Factory. Appellees, Doll Adams and husband, Squirrel Adams, as mother and father of J. B. Adams, deceased, instituted this suit to set aside an adverse ruling of the Industrial Accident Board denying them compensation. Appellees alleged "that on or about the 17th day of November, 1936, J. B. Adams was in the employ of the Sabine Basket Factory of Carthage, Panola County, Texas, and as such employee was required to assist in various duties about the Sabine Basket Factory such as the manufacturing, handling, and loading of baskets in and about the premises of Sabine Basket Factory. * * *"

"That on or about the 17th day of November, A. D. 1936, J. B. Adams, while working within the scope of his employment for the Sabine Basket Factory of Carthage, Texas, and within the limits of Panola County, Texas, received a fatal knife wound at the hands of a co-employee, J. D. Connor, which wound resulted in the death of J. B. Adams within an hour after the infliction thereof. That the knife wound was inflicted during an altercation between Connor and Adams, which altercation was provoked by Connor and not by Adams and which altercation arose immediately out of the work which the co-employees were doing, and developed over a dispute as to the manner and means of performing their duties for the Sabine Basket Factory."

Appellant answered by general demurrer, general denial and specially that J. B. Adams was not fatally injured while engaged in the course of any employment with said factory, but was killed by one Leon Connor; that said injury to Adams was intentional and was inflicted because of reasons personal to him, and not directed against him as an employee of Sabine Basket Factory; that at the time he received his fatal injuries Adams "was aggressively

engaged in a personal encounter with one Leon Connor and at said time he was willingly engaged in a fight with said Leon Connor * * * that 'he received said injuries while unlawfully, wilfully, intentionally and aggressively attempting to injure another person." Appellant further alleged that at the time J. B. Adams received his fatal injury "he was not engaged in any work having to do with or originating in the work, business, trade or profession of said Sabine Basket Factory." Nor was Adams engaged in the furtherance of the business of said basket factory. That the fatal injury to him was unrelated to the work he was engaged to perform for said basket factory and was not the result of an attempt on his part to prevent "interference with the performance of any duties he owed to said Sabine Factory."

■ Trial was to a jury on special issues. The verdict and judgment were for appellees, and appellant has appealed to this court.

Appellant's first proposition is: "Unaided by the conclusions of the pleader, the plaintiffs' petition was vulnerable to the general demurrer, in that the allegations thereof were wholly insufficient to show that J. B. Adams sustained his fatal injury within the course of his employment."

We think the pleadings of plaintiffs to which the general demurrer was directed alleged with sufficient clarity: (1) That J. B. Adams was employed by the basket factory at the time of his death; (2) that he was killed by a co-employee, Leon Connor; (3) that the altercation which resulted in Adams' death grew out of a dispute between him and Connor "as to the manner and means of performing their duties for the basket factory", and in the scope of Adams' employment with said factory; and (4) that the altercation resulting in Adams' death was provoked by Connor and not by Adams. These allegations, in our opinion, are sufficient to support the judgment rendered herein. But should we be mistaken in this conclusion, still we think the pleading was good as against a general demurrer for the reason that the cause of action stated therein, if defective in form, was amendable. As said in State Banking Board v. Pilcher, Tex.Civ.App., 256 S.W. 996, 1002, reversed by Supreme Court on other grounds, 270 S.W. 1004: "Certainly it cannot be contended with any degree of assurance that, if the trial court had sustained the general demurrer * * * appellee could not, and would not, have been accorded, under the rules of practice, the right to file an amended pleading so as to have removed the effect of sustaining said general demurrer." Erie Tel. & Tel. Co. v. Grimos, 82 Tex. 89, 17 S.W. 831; Paine v. Hart-Parr Co., Tex.Com.App., 228 S.W. 121; Northwestern Nat. Ins. Co. v. Woodward, 18 Tex.Civ.App. 496, 45 S.W. 185, writ refused.

■■ Appellant's second proposition relates to the refusal by the trial court of its peremptory instruction. At the conclusion of appellees' testimony, without introducing any testimony of its own, appellant rested its case and made motion for peremptory instruction which was by the court overruled. Appellant contends that the evidence when viewed most favorably for appellees wholly fails to establish any cause of action against it. The participants in the fatal difficulty as well as all eye-witnesses thereto, were Negroes—common laborers—and their evidence reflected by this record is typical. Some of them saw Adams and Connor immediately before the fight, others did not notice them until after the fight began. None of the witnesses saw the beginning of the difficulty. The actual fight—boxing —was what first attracted the attention of the witnesses. The record shows that Adams and Connor were boys about 18 years of age, employed by the Sabine Basket Factory as common laborers and were actually engaged in the work of unloading baskets and basket tops from a truck into a railroad car immediately before the fight. After the truck had been unloaded the driver thereof requested Connor to crank his truck. The driver's testimony with respect to events immediately following this request is:

"I picks up the crank and gives it to Leon Connor to crank the truck. I told him to give me a crank. I handed the crank to him and he took it in his hand.

"Q. What did he say? A. Well, he say, 'Well, I would give it to Levi * * *'

"Q. Who is Levi? A. J. B. (Adams). But he say 'He's a little hot with me, he might hit me with the crank.' He did hand Levi the crank. I didn't hear him say anything else. Adams didn't say anything that I heard. After Leon handed the crank to J. B. or Levi, I looked around and the crank was lying on the ground and J. B. picks up a basket and slings it after Leon (Connor) and Leon gets after him with his knife. When Leon gets after J.

B. he runs and Leon runs behind him. I did not see Leon cut J. B."

Other witnesses saw the boys fighting (boxing) before Adams threw the basket at Connor. Practically all the witnesses agree that when Connor "drew his knife" Adams, the deceased, ran. Joseph Peterson, an eye-witness to the fatal stabbing, testified:

"Q. When they finished boxing what happened, or what caused them to stop boxing? A. Well, this Connor boy got mad and got his knife out at this boy and Adams broke and run and Connor ran after him. He didn't catch him until he stopped. I saw Adams when Leon caught him.

"Q. What did he (Connor) do? A. Well, this Adams boy stopped, stooped and picked up a stick, and this boy (Connor) ran by him and struck him. I saw him stick him with a knife. After Adams was stabbed he threw a stick at Connor and started back to where he was working. He fell before he got back."

The record shows also that Adams was somewhat larger than Connor and had been practicing to be a professional boxer.

It seems to us from all the facts and circumstances in this record that a reasonable deduction to be drawn therefrom is that the fatal fight grew out of the work of cranking the truck. That is, whether Adams or Connor should crank it. This was a part of the work Adams was employed to perform for his master. It was incident to the hauling of baskets and tops from the factory to the railroad car. It affirmatively appears from this record that Adams was a peaceable boy, and at the time of the fight he said no word until after he had been fatally stabbed by Connor. From the record it also appears that these boys were friendly up to the very time of the fight. We conclude that there is sufficient evidence in this record to support the jury's answers to special issues Nos. 1 and 2, that the fatal injury received by J. B. Adams originated in and had to do with the work he was employed to perform for the Sabine Basket Factory and that the fatal injury suffered by Adams was received at a time when he was engaged in or about the furtherance of the work he was employed to perform for said factory. Adams' death was the "result of a hazard reasonably inherent in or incident to the conduct of his work" as common laborer. Among Negro common laborers, quarrels and fights must be expected to result in some instances from the manner and method of performing the work assigned to them. In McClure v. Georgia Casualty Co., Tex.Com.App., 251 S.W. 800, 803, opinion approved by Supreme Court, the following statement from Pekin Cooperage Co. v. Industrial Commission, 285 Ill. 31, 120 N.E. 530, is quoted with approval: "All concur in the rule that the accident, to be within the Compensation Act, must have had its origin in some risk of the employment. No fixed rule to determine what is a risk of the employment has been established. Where men are working together at the same work, disagreements may be expected to arise about the work, the manner of doing it, as to the use of tools, interference with one another, and many other details which may be trifling or important. Infirmity of temper, or worse, may be expected; and occasionally blows and fighting. Where the disagreement arises out of the employer's work in which two men are engaged, and as a result of it one injures the other, it may be inferred that the injury arose out of the employment. The origin of this difficulty was trifling—the taking of a few staves from the claimant's rack, to which he objected, saying, as he testified, that if Miller would stay in there he would be up with the claimant. The dispute was concerning the employer's work in which the men were both engaged, and there is evidence tending to show that the claimant was not responsible for the assault."

In Cassell v. United States Fidelity & Guaranty Co., 115 Tex. 371, 283 S.W. 127, 128, 46 A.L.R. 1137, our Supreme Court speaking through Justice Greenwood holds that even pranks practiced by workmen are considered a hazard to be encountered by them, and "constitute a risk reasonably inherent in or incident to the conduct of the employer's business." See also Southern Surety Co. v. Shook, Tex.Civ.App., 44 S.W.2d 425, writ refused; Commercial Standard Ins. Co. v. Austin, Tex.Civ.App., 128 S.W.2d 836; Traders & General Ins. Co. v. Mills, Tex.Civ.App., 108 S.W.2d 219; Consolidated Underwriters v. Saxon, Tex. Com.App., 265 S.W. 143; and Travelers Ins. Co. v. Culpepper, Tex.Civ.App., 82 S.W.2d 1054, error dismissed. Many of the decisions examined by us dealing with injury to an employee by a co-employee and holding said injury compensable, lay great stress on the fact situation as here—that

225

there had been no previous trouble between the two employees. This proposition is overruled.

■ Appellant's fourth proposition relates to the failure of Squirrel Adams to give notice of injury and death of his son, J. B. Adams, to the Industrial Accident Board, to make claim for compensation before said Board, and to give notice to said Board that he would not abide by its final order. It is undisputed that Doll Adams, the mother of J. B. Adams, deceased, and wife of Squirrel Adams, alone made claim for compensation to the Industrial Accident Board and she alone gave notice to said Board that she would not abide by its order refusing her claim. The Board made no order with respect to Squirrel Adams. In Doll Adams' claim to the Board no mention was made of Squirrel or any other beneficiary, except as reflected by the following recitation: "This claim for compensation, with respect to such injury and because of death of deceased, is made in behalf of and for each and all the legal beneficiaries of the deceased, as well as by and for the undersigned, he herein acting for himself and such legal beneficiaries." The first time Squirrel Adams' name appears in this controversy is in the District Court of Panola County where he joins his wife, Doll Adams, in this suit to set aside the ruling of the Industrial Accident Board made and entered against Doll Adams, denying her compensation. The judgment rendered by the trial court in response to the verdict of the jury was in favor of Doll and Squirrel Adams jointly.

■ It is appellant's contention that Doll Adams' claim to the Board for compensation for the death of her minor son did not have the effect of also presenting Squirrel Adams' claim. The evidence is undisputed that J. B. Adams, deceased, was the minor son of Doll and Squirrel Adams, and under R.C.S. Article 8306, Sec. 8a, of the Workmen's Compensation Act, as well as the undisputed evidence herein, Doll and Squirrel Adams were the sole beneficiaries under the claim arising from his death. The records show without dispute that on the date Doll Adams filed her claim before the Board, on the date the Board heard said claim, on the date Doll Adams gave notice to said Board that she would not abide by its ruling, and on the date this suit was filed in the court below, Squirrel Adams was confined in the Texas penitentiary. On June 7, 1937, the Industrial

Accident Board passed upon said claim of Doll Adams for compensation and declined same, holding "that said Doll Adams has failed to sustain the burden imposed upon her by law to establish by proof that J. B. Adams, deceased, suffered injury which arose in or grew out of his employment for the subscribing employer herein as alleged." In support of the trial court's judgment herein we are cited to Texas Employers' Ins. Ass'n v. Williams, 57 S. W.2d 218, by the Dallas Court of Civil Appeals. That case is remarkably similar in point of fact to this case. In that case Williams and his wife were divorced, he living in another state. Their son was accidentally killed while working in the course of his employment. Williams and his estranged wife entered into separate contracts with the same attorneys to represent them in collecting the compensation due each for the death of their son. Williams assigned his portion of the claim to his divorced wife who alone made claim for the death of their son before the Industrial Accident Board. In her application to the Board no mention was made of her divorced husband, but attached thereto was an affidavit showing his name. The wife also sought before the Board the entire compensation due to her and her estranged husband under the assignment from him. The Board allowed the claim but compensation was awarded to Williams and wife in equal portions as under the statute provided. She alone gave notice of her unwillingness to abide by the award of the Board; that is to say, the husband did not give notice of his unwillingness to abide by the award of the Board. Suit was instituted by the insurer to set aside said award, and appellees in their answer sought a lump sum payment of the whole claim to Mrs. Williams. The trial court in its judgment gave to Mrs. Williams, the mother, one-half the compensation, and to the father one-half, thus in effect affirming the action of the Industrial Accident Board. The Court of Civil Appeals held that the claim by the divorced wife alone to the Industrial Accident Board, together with the affidavit making known the husband, and the further fact that the claim was made on behalf and for all the legal beneficiaries (same as here), was sufficient to confer jurisdiction on the Board over the claim of the estranged husband. In Pruitte v. Ocean Accident & Guaranty Co., 40 S.W. 2d 254, 258, this court held that it was not necessary for each beneficiary to make

a separate claim to the Industrial Accident Board before it would be authorized to make the award. Stating "the claim as filed by Wm. Pruitte upon the blank furnished by the board, so far as this record discloses, *mentions all and gives correct information as to who the beneficiaries of Frank* Pruitte were." (Italics ours.) The case of Security Union Ins. Co. v. Reed, 42 S.W.2d 494, 496, by the Beaumont Court of Civil Appeals, we think, is squarely in point with this case. In that case Luther Kelly filed claim before the Industrial Accident Board on behalf of himself "and other relatives of deceased" giving his address only. Judge Walker, speaking for the court, stated: "In this case no one filed a claim for the minors; we mean to say that the claim filed before the Industrial Accident Board *did not give the names of the minors, and gave no information by which they could be identified.* * * * Now, since no claim was filed for these minors, the board had no jurisdiction of them." (Italics ours.)

In this case nothing was stated in the claim of Doll Adams before the Board which would identify or locate Squirrel Adams. The Board had no information upon which it could notify Squirrel Adams or his legal representatives of the hearing of the claim before it, and the action of the Board thereon. There is no semblance of proof in this record that Squirrel Adams, or anybody for him, gave notice to the Board that he was dissatisfied with the ruling on the claim filed by his wife, Doll Adams. The only notice given the Board with respect to its final ruling on Doll Adams' claim was by letter from Jones & Jones, Attorneys, and is: "Mr. Sam T. Holt, Attorney for *Doll Adams,* claimant in the above case, has employed us to assist counsel in the case. We are in receipt of your judgment dated June 7, 1937. We give you notice at this time that said *claimant* is dissatisfied with the award, and will not abide by said final ruling and decision, and shall, within 20 days after giving this notice, bring suit in the court where the injury occurred to set aside the award." (Italics ours.) In the circumstances here it is our conclusion that neither the Industrial Accident Board nor the District Court of Panola County, Texas, had jurisdiction to determine the rights of Squirrel Adams with respect to the claim for compensation for the death of his son, J. B. Adams. This proposition is sustained.

■ Appellant's fifth proposition relates to the failure of the trial court to submit an issue to the jury inquiring whether the injury to J. B. Adams, deceased, was sustained in the course of his employment with Sabine Basket Factory. The trial court submitted the following issues to the jury concerning J. B. Adams' employment with the basket factory:

Special Issue No. 1: "Do you find from a preponderance of the evidence that the fatal injury received by J. B. Adams originated in and had to do with the work which the said J. B. Adams was employed to perform for the Sabine Basket Factory? Answer Yes or No."

Special Issue No. 2: "Do you find from a preponderance of the evidence that the fatal injury suffered by J. B. Adams was received at a time when he was engaged in or about the furtherance of the work he was employed to perform for the Sabine Basket Factory? Answer Yes or No."

Special Issue No. 3: "Do you find from a preponderance of the evidence that the altercation, which resulted in the injury and death of J. B. Adams, developed over a dispute between J. B. Adams and a fellow employee as to the manner and means of doing the work which they were employed to do for the Sabine Basket Factory? Answer Yes or No."

The jury answered the issues in the affirmative. It will be noted that these special issues follow substantially the Compensation Act and the pleadings of appellees. Their combined submission means the same as the issue requested. While the issue requested is the one more favored by the decisions of this state in compensation cases, yet we fail to see any injury which resulted to appellant from the submission of the issues set out above. Texas Employers' Ins. Ass'n v. Owen, Tex.Com.App., 298 S.W. 542.

■ Appellant's fifteenth proposition relates to the failure of the court to submit to the jury the following special issue: "Do you find from a preponderance of the evidence that at the time J. B. Adams received his injury he was not engaged in a mutual encounter with Leon Connor?"

An examination of the court's charge will reveal that issues were there submitted to the jury not in the exact verbiage requested, it is true, but which, in our opinion, effectively and completely covered the is-

sue requested. Therefore this assignment is overruled.

We have carefully considered all other propositions brought forward here and it is our opinion that they are without merit and are respectfully overruled.

The judgment of the court below in so far as it allows a recovery by appellee Squirrel Adams' is reversed and dismissed as to him. In all other repects the judgment of the trial court is affirmed.

Affirmed in part and dismissed in part.