## TEXAS INDEMNITY INS. CO. v. CHEELY.
### No. 6051.

Court of Civil Appeals of Texas. Amarillo.
April 17, 1950.

Rehearing Denied May 22, 1950.

Arthur M. Teed, Curtis Douglass and W. J. Smith, all of Pampa, Underwood, Wil-

son, Sutton, Heare & Boyce, Amarillo, for appellant.

Walter E. Rogers, Pampa, for appellee.

STOKES, Justice.

This is a compensation case in which the appellee recovered judgment against appellant, Texas Indemnity Insurance Company, for total and permanent incapacity to labor, in the lump sum of $8,631.48. Appellee was employed as a janitor by Cabot Shops, Incorporated, located at Pampa in Gray County and engaged in the business of steel fabrication and the manufacture of pumping units and other like articles. Appellant carried the compensation insurance for Cabot Shops and the effect of its pleadings was to deny liability upon any of the grounds alleged by the appellee. The case was submitted to a jury upon special issues in answer to which the jury found that appellee sustained personal injuries on September 3, 1948, while working as an employee of Cabot Shops; that the injuries caused his immediate and permanent incapacity to labor and earn money; that appellee was not, at the time of his injury, engaged in a wilful intention or attempt unlawfully to injure Silas Prather, another employee of Cabot Shops; that appellee did not voluntarily turn aside from his duties and strike Prather prior to being injured or prior to the time Prather struck him or threaten to strike him; and that manifest hardship and injustice would result to appellee if the compensation awarded to him was not paid in a lump sum. In addition to the findings of the jury the trial judge made findings to the effect that appellee was acting in the course of his employment at the time he was injured and that such injury was accidental.

The record shows that appellee Cheely, was 65 years of age, and Silas Prather, about 60 years of age. They were employed by Cabot Shops as janitors, but they did not work together. The work of one of them was in one building and that of the other was in a different building. Prior to the day before appellee received his injuries, one Chism, another employee of Cabot Shops, in an apparent effort to stir up a difficulty between Prather and appellee, told each of them that the other had made derogatory remarks concerning him and, on the day before the injury, Chism and appellee were in the first aid room when Prather passed by. Chism called Prather into the first aid room and told appellee to say in Prather's presence what he had theretofore said about Prather. Chism immediately left the first aid room and Prather also left, no words having passed between him and appellee. After this incident, someone told Prather that Chism had said Prather was "yellow" and that he "walked out on" appellee in the first aid room the day before. On the morning of September 3, 1948, the day following the incident in the first aid room, Prather decided he would have a settlement with Cheely concerning the remarks Cheely supposedly had made about him, and he went to the gatehouse where appellee was at work and, according to appellee's testimony, appellee stepped aside to give him room to pass. Instead of passing through the room, however, Prather asked appellee what it was appellee had been saying about Prather and Prather then struck appellee and knocked him into a nearby window breaking out the glass. Cheely testified that, when the glass stopped falling "I kind of got up and started reaching for him, sort of, with my hands. That is the last I know. I went out. I was blind as a bat." Prather's testimony and also that of the clerk or bookkeeper who was present and witnessed the difficulty, told a different story concerning the incident, but the jury accepted the appellee's version and we will, of course, treat the case in accordance with it. There was testimony from physicians to support the finding of the jury as to the extent of appellee's injuries.

At the close of the testimony appellant filed and urged a motion for an instructed verdict which was denied by the court. Appellant duly excepted to the judgment, gave notice of appeal and presents the case in this court upon a number of assignments and points of error, the first of which is that the court erred in overruling its motion for an instructed verdict because there was no evidence that appellee's injuries arose out of, or were incident to, his em-

ployment so as to be compensable. It contends the overwhelming preponderance of the evidence showed that appellee, if injured at all, was not injured in the course of his employment but that such injury was caused by the act of a third person, to-wit, Silas Prather, intended to injure appellee because of reasons personal to him and not directed against appellee as an employee or because of his employment.

■ .Subdivision 2, Sec. 1 of Vernon's Ann.Civ.St. Article 8309, defining the terms "injury" or "personal injury," provides that the statute does not include "an injury caused by an act of a third person intended to injure the employee because of reasons personal to him and not directed against him as an employee, or because of his employment." Many cases have been before our courts in which the provisions of Subdivisions 2 and 4, Sec. 1, Article 8309 have been considered and it is the universal conclusion that the holding of the Supreme Court in Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S.W. 72, 73, 28 A.L.R. 1402, reflects the exact conditions involved in it. In writing the opinion for the court, Justice Greenwood said:

"An injury has to do with, and arises out of, the work or business of the employer, when it results from a risk or hazard which is necessarily or ordinarily or reasonably inherent in or incident to the conduct of such work or business. As tersely put by the Supreme Court of Iowa:

"'What the law intends is to protect the employee against the risk or hazard taken in order to perform the master's task.' Pace v. Appanoose County, 184 Iowa 498, 168 N.W. [916], 918."

■■ A number of cases which we will cite have involved injuries received in personal encounters and difficulties between employees and, in some of them, recovery of compensation has been allowed by the courts and in others it has been denied. The mere fact that two employees of the same employer, or one of them and a third person not employed by the same employer, fall out with each other and engage in a personal encounter or fight is not controlling of the question of whether or not one of the employees who receives an injury while engaged in it is entitled to compensation. Moreover, it is now well settled that, in order to recover compensation under the provisions of our workmen's compensation law, proof that the injury occurred while the employee was engaged in or about the furtherance of his employer's affairs or business is not alone sufficient. He must also show that his injury was of such kind and character as had to do with and originated in the employer's work, trade, business or profession. Aetna Life Ins. Co. v. Burnett, Tex.Com.App., 283 S.W. 783; Richardson v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 46 S.W.2d 439; Erwin v. Texas Employers' Ins. Ass'n, Tex. Civ.App., 63 S.W.2d 1076; New Amsterdam Casualty Co. v. Collins, Tex.Civ.App., 289 S.W. 701; Texas Employers' Ins. Ass'n v. Bailey, Tex.Civ.App., 266 S.W. 192.

In the Richardson case, supra, the work consisted of paving the streets and some thirty-five Negroes were employed. Some of them brought their lunch, although this was not required. On the day preceding the injury someone had stolen the lunch of one of the employees and the next day one Williams referred to Richardson as "lunch Sam," implying that Richardson had stolen the lunch. Richardson resented the insinuation and, when it was repeated by Williams, Richardson told him that he, Williams, was going to keep on until somebody got hurt. He thereupon picked up an iron pin and Williams walked away. Richardson threw the iron pin back on the truck and when Williams walked by him, he kicked Williams. The latter then picked up the iron pin and struck Richardson, from which Richardson died. Richardson's surviving wife was denied recovery in the trial court and, in affirming the judgment, the Court of Civil Appeals said: "It seems to us that the only reasonable deduction that could be drawn from these undisputed facts is that the injury was caused by the act of a third person intended to injure the deceased, because of reasons personal

to him and not directed against him as an employee, or because of his employment." [46 S.W.2d 441]

These are the exact words found in the statute above mentioned and a writ of error was denied by the Supreme Court.

In the case of New Amsterdam Casualty Co. v. Collins, supra, one Roberts was employed to keep the machinery in order and he had painted a boiler. Someone wiped his gloves on the freshly painted boiler which resulted in smearing or soiling it. This enraged Roberts and he accused all of the employees, and especially Collins, of having committed the act. A fight ensued between Roberts and Collins in which Collins got the best of it. About thirty minutes later Roberts and his son returned to the premises, Roberts having procured a pistol, and Collins was then standing on a pump cleaning some light bulbs. The son immediately jerked Collins from the pump and another fight ensued, this time between Collins and Roberts' son, in which Collins again was getting the upper hand. While the fight was in progress the elder Roberts drew his pistol, struck Collins on the head and shot him in the eye, inflicting the injuries of which he complained. The court held that Collins' injury was not compensable for the reason that it was caused by an act of a third person intended to injure Collins because of reasons personal to Collins and not directed against him as an employee, or because of his employment. The court observed further that the pistol shot directed by Roberts at Collins was not directed against him either as an employee of his employer or because of his employment; but solely because of Roberts' rankling or rage toward him personally. The court also observed that the shot was, of course, intended to injure him, but the firing of it was not inspired by his employment nor did his employment sustain any casual relation to it. The incentive was to avenge the former whipping Roberts had received at Collins' hands, and also to prevent an apparently impending one for Roberts' son.

The other cases cited are substantially to the same effect as those we have

discussed and we think the facts revealed by the case now before us bring it squarely within the holdings in those cases. Appellee and Prather were elderly men and Chism seems to have conceived the distorted idea he could have some fun by inveigling them into a fight. The record shows that appellee had not made the derogatory remarks about Prather that Chism told Prather appellee had made. Prather testified, without contradiction, that Chism called him to the first aid room. He said that Chism hollered at him two or three times but he paid no attention to Chism until he persisted and then he asked Chism "what do you want." Chism told him to come on into the first aid room which Prather did and Chism then closed the door and left the room. As he left he said to appellee "now tell the old man what you have said about him." Prather further testified that, the next day, he went to the gatehouse to talk with appellee about settling the matter that had arisen between them on account of Chism's reports to him, particularly about what appellee was reported to have said about Prather running out of the first aid room. These reports had included an intimation that Prather had left the first aid room because he was a coward, the actual term used being "yellow." When he arrived at the gatehouse he said to appellee substantially, that he understood appellee had said that he ran out on appellee at the first aid room and, according to appellee's testimony, Prather then struck appellee and knocked him into the window, which resulted in appellee's injuries.

We think it is clear that the altercation between Prather and appellee which resulted in appellee's injuries was caused by the act of Prather, a third person; that Prather intended to injure appellee because of reasons personal to him, viz., his resentment of the statements and insinuations he believed appellee had made concerning his being a coward or "yellow"; and that they were not directed against appellee as an employee of Cabot Shops or because of his employment there.

Appellee contends that there is no fixed rule to determine what is a risk of employ-

ment but that it has repeatedly been held by our courts that, where men are working together in the same work, disagreements may be expected to arise about the work, the manner of doing it, as to the use of tools, interference with one another, and many other details which may or may not be trivial or important. He contends that antagonisms, animosities and vagaries of temper may be expected and, where disagreements and difficulties arise out of an employer's work in which men are engaged and, as a result, one of them injures another, it may be inferred that the injury arose out of the employment. He cites us to a number of cases which he contends support his claim that his injuries arose out of, and were connected with, his employment and he asserts with much earnestness that the jury having so found, the court did not err in refusing appellant's motion for an instructed verdict and that the judgment rendered by the court was the proper one under the facts revealed. In support of these contentions he cites us to such cases as Vivier v. Lumberman's Indemnity Exchange, Tex.Com.App., 250 S.W. 417; U.S. Casualty Co. v. Hardie, Tex.Com.App., 299 S.W. 871; Consolidated Underwriters v. Adams, Tex.Civ. App., 140 S.W.2d 221; Traders & General Ins. Co. v. Mills, Tex.Civ.App., 108 S.W.2d 219; Associated Employers Lloyds v. Groce, Tex.Civ.App., 194 S.W.2d 103, and other cases of like import. We find nothing in those cases which conflicts with the holdings in the cases first cited supra. In fact, the cases are all in harmony upon the questions decided.

In the Vivier case the facts were that Vivier was a night watchman at the lumber company's place of business. He was found one morning sitting in his chair, unconscious, his pay envelope lying nearby, open and empty. It was evident he had been struck on the head with an iron bar and that the motive of his assailant was robbery. The Court of Civil Appeals had held that Vivier met his death at the hands of an assailant whose motive was to rob Vivier of money on his person at the time and that the assault was prompted by a reason personal to Vivier and was not

directed against him as an employee of the lumber company in any respect, or because of his employment, and that, therefore, what is now Subdivision 2, Sec. 1 of Article 8309 excluded the injury which resulted in his death. Tex.Civ.App., 239 S.W. 286. The Supreme Court disagreed with the holding of the Court of Civil Appeals, reversed its judgment and affirmed that of the trial court. In discussing Subdivision 2 of the Article mentioned the court gave an illustration of the kind of case in which it did apply and, in doing this, it said: "As we apprehend the intention of the Legislature, it was to apply to such cases where antecedent malice, existing in the mind of another causing the other to follow the employee and inflict injury upon him, wherever he was to be found, or to cases where the employee, by his own initiative, provoked a difficulty which caused the other party to feel a 'personal' interest in assaulting him." [250 S.W. 418]

As we view the facts revealed in the instant case, that is exactly what happened between appellee and Prather. On account of the report that had been made to Prather the day before appellee received his injury, Prather became offended and decided to go to appellee and have a settlement with him. This was about a matter that did not in any respect pertain to the employment of either of them and, acting upon his conclusion to have a setttlement with appellee, Prather went to the place where appellee was working and the difficulty between them immediately ensued.

The Hardie case, cited by appellee, reveals facts wholly different from those shown by the evidence in the instant case. One Alexander, a clerk in another establishment located in the same district, went into the store where Hardie was an employee, gathered up some lettuce, put it in a paper bag and started to leave. It was a custom between the merchants of the district to borrow from each other articles of which they were temporarily short and return them when a new supply was procured. Hardie asked Alexander how much lettuce he had taken. Alexander thereupon set the lettuce down and grabbed

hold of Hardie. A tussle ensued, probably in fun, and Hardie was injured in the tussle. It seems that Hardie was wearing a new suit of clothes and it was Alexander's purpose to throw him down and soil his clothes. Hardie was permitted to recover upon the ground that Alexander had interferred with him and temporarily prevented him from performing the duties for which he was employed. The effect of the holding was that the incident did not come within the exception of Subdivision 2, Sec. 1 of Article 8309. It will be noted that there was no intention on the part of Alexander to injure Hardie. It is not revealed that Alexander had any reason to do so. The statute specifically provides that the injury excepted is one caused by the act of a third person "intended to injure the employee because of reasons personal to him."

In the case of Traders & General Ins. Co. v. Mills, supra, the facts were that one Hawthorne, a co-employee with Mills at a sawmill, habitually neglected his work which resulted in extra work and trouble for Mills. Mills had protested a number of times and had tried to show Hawthorne how to do his work so that it would not interfere with Mills' work. On the occasion of the injury, Mills became enraged at Hawthorne, struck him and returned to his work. Hawthorne then procured a piece of timber, went to Mills and, while Mills had his back turned, Hawthorne struck him on the head causing his death. The court held that Mills' surviving wife was entitled to recover compensation because the difficulty arose out of the manner in which the work was being done by the employees for their employer.

To the same effect is the case of Associated Employers Lloyds v. Groce, supra. The court held that, while what Groce said to Waldrum might have been of an insulting nature, yet it all arose over the manner in which the work of the master was being conducted and Groce was entitled to recover. Substantially the same circumstances and holding are revealed in the case of McClure v. Georgia Casualty Co., Tex.Com.App., 251 S.W. 800 and Commercial Standard Ins. Co. v. Austin, Tex. Civ.App., 128 S.W.2d 836, cited by appellee. The disputes and altercations out of which the injuries grew in those cases arose over the manner of doing the employer's work and it has been consistently held by our courts that, where an employee is injured in a personal difficulty arising over the manner in which the work of the employer is being done, although the difficulty itself is not a part of the work of the employee, the injured employee is entitled to compensation under the Texas Workmen's Compensation Law. Where men are engaged in a common enterprise and are working in close contact with each other, it must be expected that, upon occasions, they will disagree as to the manner in which their work should be performed and, if a difficulty arises concerning the method of doing the work or is the result of the manner in which it is being performed by one or more of them, and one of them is injured in the difficulty, his injury is compensable because it arises out of the employment and the work being performed for his employer.

It has been just as consistently held, however, that an injury inflicted by a third person in a difficulty with an employee in which the third person intends to injure the employee and the intention arises from some cause personal to him and not directed against the employee as such or because of his employment, he cannot recover for the injury sustained in such a difficulty. In fact, the statute clearly so provides. In our opinion appellee was not entitled to recover compensation under the facts revealed by the testimony and the court erred in denying appellant's motion for an instructed verdict.

A number of other assignments of error are presented and urged but the conclusions we have expressed concerning the matter discussed make it unnecessary to discuss them.

The judgment of the court below will be reversed and judgment here rendered that appellee take nothing by his suit.