When the trial is before the court without the intervention of a jury, it will be presumed that he ignored any inadmissible evidence. Widener v. State, 159 Tex.Cr.R. 257, 262 S.W.2d 401; Martin v. State, 160 Tex.Cr.R. 364, 271 S.W.2d 279; and Arnold v. State, 161 Tex.Cr.R. 344, 277 S.W.2d 106.

Finding no reversible error, the judgment of the trial court is affirmed.

---

**Ex parte Dale K. SCHOOLER.**

No. 29336.

Court of Criminal Appeals of Texas.

Dec. 11, 1957.

George S. McCarthy, Amarillo, for appellant.

Wayne Bagley, Dist. Atty., Amarillo, Leon B. Douglas, State's Atty., Austin, for the State.

---

MORRISON, Presiding Judge.

This is an extradition proceeding. Relator has filed a motion to dismiss the same as moot. The State joins in the motion, and it is granted.

The appeal is dismissed.

---

**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant.**

v.

**Oran Monroe STILWELL, Appellee.**

No. 6706.

Court of Civil Appeals of Texas.

Amarillo.

Oct. 28, 1957.

Rehearing Denied Dec. 2, 1957.

Crenshaw, Dupree & Milam, Lubbock, for appellant.

A. W. Salyars and Bryan B. Dillard, Lubbock, for appellee.

PITTS, Chief Justice.

This is an appeal from a judgment rendered upon a jury verdict in a workman's compensation suit filed by appellee, Oran Monroe Stilwell, against appellant, Texas Employers' Insurance Association, seeking total and permanent disability benefits by reason of an alleged injury he sustained on December 17, 1955, in Lubbock County, Texas, while employed by Luther Transfer and Storage, Incorporated, with appellant herein as the insurance carrier. The case was tried to a jury as a result of which appellee was awarded compensation for total temporary disability for 104 weeks and 20% partial permanent disability, from which award an appeal has been perfected. Appellant protected its record by timely asking for a peremptory instruction, judgment non obstante veredicto and by filing its motion for a new trial after the verdict.

Upon special issues submitted the jury found that appellee was accidentally injured on December 17, 1955, while he was employed by Luther Transfer and Storage, Inc., and further found that such injury was received by appellee while he was in the course of his employment by his employer, being guided in the latter finding by a definition the trial court gave of the term "injury sustained in the course of employment." The controlling question to be here determined is whether or not as a matter of law appellee received his injury while he was engaged in the course of his employ-ment or while he was engaged in or about the furtherance of the affairs or business of his employer. The evidence admittedly reveals that appellee was not actually engaged in the work assigned for him to do by his employer at the time of his injury, leaving only the question of whether or not under the facts presented he was engaged in or about the furtherance of the affairs or business of his employer at the time he received his injury.

In defining the usage of the term "injury sustained in the course of employment," Article 8309, Section 1, Subdivisions 1, 2, 3 and 4, Vernon's Ann.Civ.St., excluded several situations from coverage by the said term but finally in Subdivision 4 it says such:

"* * * shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere."

The courts of Texas have found some difficulty in trying to draw a line of demarcation between facts and circumstances which will permit recovery under the terms of the provisions of the Statute just previously quoted and those which will not permit recovery. Both parties here have cited the recent case of Superior Ins. Co. v. Jackson, Tex.Civ.App., 291 S.W.2d 689, 691, wherein the injured party contended that he was engaged in the furtherance of his employer's business when he was injured and both the trial court and the court of civil appeals sustained his contentions but the Supreme Court overturned both lower courts by reversing and rendering against the contentions of the injured party and there used the following language:

"While there is imposed upon the courts the duty of construing the compensation law liberally in favor

of employees and though it is recognized that no plain, clear and distinct line of demarcation can be drawn applicable to all facts and situations, yet we have found no case where the provisions of the compensation law have been extended so as to cover an employee under the undisputed facts as shown in the record here."

The court there further said:

"* * * that the law allows compensation: '(1) Where the injury arises out of or is actually caused by the special work or job for which the employee was engaged, * * * or (2) where the injury has relation to the work for which the employee was engaged, * * *'"

The court then held that:

"What the employee was doing at the time of the injury was not relevant to the work he was employed to do."

In this case, as in the case just cited, the facts concerning the controlling issue are without material dispute. Appellee usually worked, along with other employees, as a general laborer for his employer, usually loading and unloading trucks at the warehouse of his employer located at Avenue E and 23rd Street in Lubbock, Texas, but sometimes engaging in such work away from the warehouse and was being paid for his services on an hourly basis. The evidence reveals in effect that late in the afternoon of December 16, 1955, Gene Harper, employer's warehouse foreman, instructed appellee, along with Aaron Rawlins, Maurice Lytle, and two other unnamed employees, all of whom were general labor employees of Luther Transfer and Storage, Inc., to all report to the warehouse at 7:00 a. m. o'clock the next day and go from there to the Pioneer Natural Gas Company's pipe yard, located a short distance from the warehouse, and there unload a car of pipe; that Harper placed Aaron Rawlins in charge of the unloading job as foreman in order to give the Pioneer Natural Gas

Company manager a group leader with whom he could confer if a spokesman for the employees were needed; that appellee, Lytle and the two other unnamed employees arrived at the warehouse next morning a little before 7:00 o'clock but Rawlins had not arrived; that at 7:00 o'clock that morning it was still dark and was cold when appellee, while waiting at the warehouse for Rawlins, got in the car with Lytle who kept his car engine running and his heater on to keep them warm; at about 7:10 a. m. o'clock while appellee and Lytle were still in the latter's car, Lytle said, "Let's go see about Rawlins," who lived at 1514 on 23rd Street about 10 or 12 blocks directly west of the warehouse; that, without any reply from appellee to Lytle's remark, in so far as the record reflects, the two left the warehouse immediately in Lytle's car with Lytle driving and reached Rawlins' house at about 7:15 a. m. o'clock; that appellee remained in the car there while Lytle got out and knocked upon the door of Rawlins' house and Rawlins opened the door; Rawlins had overslept that morning but was then already up and fully dressed or almost fully dressed and was preparing to leave for work in his own car but upon the invitation of Lytle, Rawlins then started to the warehouse on his way to work in Lytle's car along with him and appellee; that all three of them were riding in the front seat with Lytle driving and appellee seated in the middle when, only a few blocks away from Rawlins' house and before reaching the warehouse, Lytle's car collided with another motor vehicle at the intersection of 23rd Street and Texas Avenue in Lubbock, Texas, which resulted in the injury of appellee; that the owner and operator of the other motor vehicle was not an employee and had no connection with appellee's employer, Luther Transfer and Storage, Inc.

In support of his claims appellee offered the testimony of himself, Lytle and Rawlins and their testimony established the foregoing facts. The three said witnesses did about the same type of work for their employer and all drew about the same wages.

The evidence further reveals in effect that all of the named employees were paid on an hourly basis and furnished their own conveyances to and from work and their employer had no control over them in such matter and was in no way responsible for their conveyances, the routes they travelled or the expenses of the same; that they usually began work each day at about 8:00 a. m. o'clock but on special occasions started earlier and their hourly pay started when they reported for work but on December 17, 1955, the day of the collision and injury, neither appellee, Lytle or Rawlins sought or drew any pay for that day or any part thereof from their employer; that the warehouse office usually opened each day about 7:20 or 7:25 a. m. o'clock and was not open on the early morning in question when appellee, Lytle and the other two unnamed employees reported for work; that, the warehouse office not being open on that early morning, appellee and Lytle had no way to telephone Rawlins who in fact had no telephone in his house anyway; that when Lytle and appellee left to "go see about Rawlins" the other two unnamed employees present left and went on over to the Pioneer Natural Gas Company's pipe yard where the car was to be unloaded; that no foreman or anybody else with authority connected with Luther Transfer and Storage, Inc., told Lytle or appellee to go see about Rawlins or even suggested such on that occasion; that Lytle had no authority from the employer to direct or boss appellee; that on the early morning in question two trucks owned by the employer that were to be used in unloading the pipe in question were standing at the warehouse of the employer, Luther Transfer and Storage, Inc., with the keys in the ignitions and ready to be used by the employees in question to unload the pipe in question. Lytle testified at one time they could not go to work on the morning in question without Rawlins but he later testified that employees did not show up for work sometimes and that if Rawlins had not showed up for work Harper, the warehouse foreman, would have assigned somebody else to take his place.

The early case of Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S. W. 72, 73, 28 A.L.R. 1402, presented a close question of like import here but the court there held that the deceased, although returning from lunch at the noon hour when killed by a moving train, was in fact on premises so closely connected with his own labor and at a place danger was often so eminent that it could hardly be said he was not on the premises of his employer where he was then engaged in or about the furtherance of his employer's business, for which reason recovery was allowed to his survivors. However, the court there pronounced rules of law that we think are pertinent here, in this language:

"An injury has to do with, and arises out of, the work or business of the employer, when it results from a risk or hazard which is necessarily or ordinarily or reasonably inherent in or incident to the conduct of such work or business. As tersely put by the Supreme Court of Iowa: 'What the law intends is to protect the employee against the risk or hazard taken in order to perform the master's task.'— Pace v. Appanoose County, 184 Iowa 498, 168 N.W. [916] 918."

Thereafter in the case of Smith v. Texas Employers' Ins. Ass'n, 129 Tex. 573, 105 S. W.2d 192, 194, the Commission of Appeals, in an opinion approved by the Supreme Court, denied recovery in a case similar in some respects to the Behnken case just previously cited. The court there said in part:

"It appears to be the settled rule that even though the contract of employment contemplates that the employee, while engaged generally in the performance of his duties, may be subjected to the perils and hazards of the streets and highways, nevertheless in order that an injury resulting from the risks of the streets may be compensa-

ble, the employee, at the time of the injury, must be actually engaged in the performance of some particular duty of his employment, or must be upon some substantial mission of his employer in the course of his employment, which subjects him to such perils."

In the case of Safety Casualty Co. v. Wright, 138 Tex. 492, 160 S.W.2d 238, 245, an employee was a pipe line walker for his employer. After having walked a part of the line on a given day he boarded a public bus to ride to another point to continue further pipe line walking for the day. He usually rode on the said bus to connect up his daily work with the knowledge and approval of his employer. While riding on the said bus and between his two points of work, the bus caught on fire while the said employee was underneath the bus trying to help repair it so he could get back on his employer's job and as a result of the fire the said employee burned to death, consequently in a suit filed, his surviving widow sought compensation. The trial court and the court of civil appeals sustained her claim but the Supreme Court reversed it, saying in part:

"After a careful consideration of the question, we are compelled to the conclusion that, notwithstanding the fact that we still hold that Valentine C. Wright was in the course of his employment with Magnolia Pipe Line Company while a passenger of this bus, still it would be unreasonable, under the facts of this record, to say that he was in the course of such employment while under such bus for the purpose of making repairs thereon, either of his own volition, or at the request of the bus driver. Certainly at such time he had turned aside from the course of his employment with the Pipe Line Company, and was in the course of performing services for the bus owner or its driver. Texas Employers' Ins. Ass'n v. Bailey, Tex.Civ.

App., 266 S.W. 192, writ refused. Aetna Life Ins. Co. v. Burnett, Tex. Com.App., 283 S.W. 783; Aetna Life Ins. Co. v. Matthews, Tex.Civ.App., 47 S.W.2d 667, writ refused. Ocean Accident & Guarantee Corp. v. Riggins, Tex.Civ.App., 291 S.W. 276, writ refused. Langford v. El Paso Baking Co., Tex.Civ.App., 1 S.W.2d 476, writ dismissed."

In the case of Kimbrough v. Indemnity Ins. Co. of North America, Tex.Civ.App., 168 S.W.2d 708, 709 (writ refused) the employee reported for usual work for his employer but then turned aside to engage in other work with the knowledge and approval of one of his employer's foremen, who sent another employee to help him, as a result of which joint efforts of the two, the first employee mentioned was injured. In his suit for compensation the said first employee mentioned contended he was engaged in the furtherance of his employer's business on his employer's premises during working hours but the court denied him recovery. The court there said in part:

"In order to recover benefits under the Workmen's Compensation Act of the State of Texas, an employee must prove not only that his injury occurred while he was engaged in or about the furtherance of the affairs or business of his employer, but also that the injury was of such kind and character as had to do with and originated in the work, trade, business or profession of the master. Not every injury which occurs at or near the place of employment is compensable. The injury must be brought about by a risk which is incidental to and arises out of the task the workman has to do in fulfilling his contract for service, and to which the employee would not be subjected but for the employment contract for service * * * Our courts have uniformly held that where the evidence shows that at the time of an injury to an employee, the employee is engaged in doing or attempting to do something not required

of him by his contract of employment, he is not engaged in his master's business but in an enterprise of his own and that the injuries received are not compensable under the Workmen's Compensation Act, Vernon's Ann.Civ. St. art. 8306 et seq."

In the case of Texas Indemnity Ins. Co. v. Cheely, Tex.Civ.App., 232 S.W.2d 124, 126, (writ refused) this court denied recovery of compensation where an employee turned away from the work he was employed to do while on duty to engage in other matters yet claimed compensation. This court there said in part:

"Moreover, it is now well settled that, in order to recover compensation under the provisions of our workmen's compensation law, proof that the injury occurred while the employee was engaged in or about the furtherance of his employer's affairs or business is not alone sufficient. He must also show that his injury was of such kind and character as had to do with and originated in his employer's work, trade, business or profession. Aetna Life Ins. Co. v. Burnett, Tex.Com.App., 283 S.W. 783; Richardson v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 46 S.W.2d 439; Erwin v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 63 S.W.2d 1076; New Amsterdam Casualty Co. v. Collins, Tex.Civ.App., 289 S.W. 701; Texas Employers' Ins. Ass'n v. Bailey, Tex. Civ.App., 266 S.W. 192."

In analyzing the facts in this case produced by appellee's witnesses we find that on the early, cold morning in question appellee climbed in the car with Lytle where the engine was running and the heater on probably to keep warm while waiting for Rawlins to come. That soon thereafter Lytle said, "Let's go see about Rawlins"; that, in so far as the record reflects, appellee made no reply to Lytle's remark but remained in the car while Lytle drove them both to Rawlins' house where appellee remained in Lytle's car while Lytle conferred

with Rawlins at Rawlins' house and found him about ready to drive to work in his own car. But Rawlins decided to ride to work with Lytle and appellee in the former's car with Lytle driving it. On the way to work a collision occurred before they reached the warehouse which resulted in appellee's injury. According to the record, the mission of Lytle and appellee on that morning was to "go see about Rawlins." There was nothing said, in so far as the record reveals, about rushing the work of the day or about furthering the employer's business. Appellee knew only "vaguely" where Rawlins lived but Lytle knew where he lived. Lytle suggested they go see about Rawlins; he drove his car and contacted Rawlins after they got there and was driving his own car with appellee merely riding as a passenger on the return trip to work when the collision occurred and appellee was injured. Appellee did nothing but ride with Lytle while Lytle furnished the car, drove it, did all of the maneuvering and performed all of the actions in connection with the purported mission. According to their own testimony, if they had waited only a few minutes longer, Rawlins would soon have joined them at the warehouse to perform the work as directed on the day before. According to the evidence, if Rawlins had never come, the warehouse office would have opened soon and Harper would have named somebody else to take his place. According to the evidence Rawlins was usually on equal grounds with appellee and Lytle, since they all did the same kind of work and drew equal pay therefor. According to appellee's testimony, Rawlins was made foreman over the job in question because "the manager out at the Pioneer Gas wanted some man over the job so he could talk to him if anything come up."

Appellee now claims they wanted to find Rawlins in order to get instructions from him and follow his directions. But full instructions had already been given to appellee, Rawlins, Lytle and the other two unnamed workmen with all of them pres-

ent, by Gene Harper, employer's warehouse foreman, the late afternoon before, directing all of them what to do and when and where to do it, and the trucks they were to use in the performance of their assigned duties were standing at the warehouse ready for their use the morning they arrived. Appellee had not performed any work that morning and neither had Lytle or Rawlins. Nobody had directed or suggested that appellee and Lytle "go see about Rawlins."

In the case at bar, appellee made an unauthorized trip for an unauthorized purpose according to the evidence presented. He had been instructed by his employer's foreman to meet Rawlins at the warehouse and go from there to Pioneer Gas Company's yards to perform the labor. There was no direction by the employer or any of its agents to appellee or Lytle to go on the mission they made on the occasion in question. There could not have been any expressed or implied approval by the employer of such a mission since none of employer's agents knew about any such a mission until after the collision and injury at least.

Under the facts presented and the rules of law governing such, it is our opinion that appellee failed to establish his claim for compensation. He was not on a mission required by his employment. It is our opinion further that the evidence given by appellee's witnesses establishes conclusively that the collision or accident which resulted in appellee's injury did not originate from a risk or hazard of his employment and that appellee was not on a mission on the occasion in question connected with or required by his contract of employment in such a way that he could have been reasonably calculated to have been then engaged in or about the furtherance of the affairs or business of his employer, for which reason he is not entitled as a matter of law to recover compensation. Other authorities in support of our conclusion are: Texas Employers' Ins. Ass'n v. Grammar, Tex.Civ.App., 157 S.W.2d 701; McKim v. Commercial Standard Ins. Co., Tex.Civ.App., 179 S.W.2d 357;

Graves v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 197 S.W.2d 596; Great American Indemnity Co. v. Kingsbery, Tex.Civ.App., 201 S.W.2d 611; American General Ins. Co. v. Williams, 149 Tex. 1, 227 S.W.2d 788.

It is our opinion that the trial court should have sustained appellant's motion for a peremptory instruction or for a judgment non obstante veredicto and rendered judgment accordingly. Consequently for the reasons stated we sustain appellant's Points 1, 2, 3, 4 and 5. In any event the jury's affirmative answer to the issue finding appellee was injured while he was engaged in the course of his employment is contrary to the overwhelming weight and preponderance of the evidence, for which reason appellant's Point 6 is likewise sustained.

For the reasons stated the judgment of the trial court is reversed and judgment is here rendered denying appellee, Oran Monroe Stilwell, any recovery. Reversed and rendered.