**TEXAS EMPLOYERS' INSURANCE ASSO-CIATION, Appellant,**

v.

**Raymond BLESSEN, Appellee.**

No. 6716.

Court of Civil Appeals of Texas.

Amarillo.

Dec. 2, 1957.

Rehearing Denied Jan. 6, 1958.

Underwood, Wilson, Sutton, Heare & Boyce, Amarillo, for appellant.

Merchant & Fitzjarrald, Amarillo, Edward L. Poole, Amarillo, of counsel, for appellee.

PITTS, Chief Justice.

This is an appeal from a judgment rendered upon a jury verdict in a workman's compensation action filed originally by appellee, Raymond Blessen, against appellant, Texas Employers' Insurance Association, seeking disability benefits by reason of an alleged injury he sustained on July 14, 1955, while employed by Texas Sand and Gravel Company which is engaged in business in Potter County, Texas, with appellant herein as the insurance carrier. The jury found that appellee was accidentally injured on the said date while he was engaged in the course of his employment with his employer, Texas Sand and Gravel Company, as a result of which judgment was rendered for appellee granting him compensation benefits. Appellant perfected an appeal and the controlling question to be determined here is whether or not appellee as a matter of law received his injuries while engaged in the course of his employment as provided for in Article 8309, Vernon's Ann.Civ.St. We may observe also that appellant timely presented its motions for a peremptory instruction and for a judgment non obstante veredicto, both of which were overruled.

In defining the usage of the term "injury sustained in the course of employment," Article 8309, Section 1, Subdivisions 1, 2, 3 and 4, excluded several situations from coverage by the said term but finally in Subdivision 4 it says such:

"* * * shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere."

The courts of Texas have found some difficulty in trying to draw a line of demarcation between facts and circumstances which will permit recovery under the terms of the provisions of the Statute just previously quoted and those which will not permit recovery. Both parties here have discussed the recent case of Superior Ins. Co. v. Jackson, Tex., 291 S.W.2d 689, 691, wherein the injured party contended that he was engaged in the furtherance of his employer's business when he was injured and both the trial court and the court of civil appeals sustained his contentions but the Supreme Court overturned both lower courts by reversing and rendering against the contentions of the injured party and there used the following language:

"While there is imposed upon the courts the duty of construing the compensation law liberally in favor of employees and though it is recognized that no plain, clear and distinct line of demarcation can be drawn applicable to all facts and situations, yet we have found no case where the provisions of the compensation law have been extended so as to cover an employee under the undisputed facts as shown in the record here."

The court there further said:

"* * * that the law allows compensation: '(1) Where the injury arises out of or is actually caused by the special work or job for which the employee was engaged, * * * or (2) where the injury has relation to the work for which the employee was engaged, * * *'".

The court then held that:

"What the employee was doing at the time of the injury was not relevant to the work he was employed to do."

In this case, as in the case just cited, the facts concerning the controlling issue are without material dispute. Appellee had been employed as a truck driver by his employer for several years and was being paid for his services on an hourly basis. He had so worked on the day of his injury when his work day began at 8:00 A.M. o'clock and ended at 6 P.M. o'clock. After his working day ended he went home, "got

cleaned up and had supper," after which he stayed around the house with the family for awhile until he went with two other fellow employees, namely Charlie Pulliam and Robert Lowery, in Pulliam's car, to an old gravel pit about eight miles away, previously abandoned by their employer, to get a transformer, bring it home with them, connect it up with the electrical system they already had in their homes to make the electric current stronger. Upon arrival at the old gravel pit appellee had climbed upon the transformer utility pole and in some manner there contacted a power line or a live electric wire, as a result of which he was severely injured at 7:30 P.M. o'clock.

Appellant contends that appellee's day's work had ended one and one-half hours before he received his injury while he was on a personal mission with other fellow employees who were likewise paid on an hourly basis and whose work day for their employer had already ended. Appellee contends that because he lived on his employer's premises in a rented house owned by his employer, who charged only a nominal rental of $5 per month with water and electricity furnished, his mission to get the transformer, attach it to the electrical system of his employer's house occupied by himself and family in order to strengthen the electric current already there would be beneficial to his employer, for which reason he claims he was engaged at the time of his injury in or about the furtherance or the affairs or business of his employer, as provided for by law.

Appellee testified in effect that he had worked for his employer as a truck driver for about three consecutive years and was engaged in hauling gravel and sand mostly to various places; that Bernie McHargue was superintendent of Texas Sand and Gravel Company and he was the man who hired appellee; that he was appellee's superior and boss on the job and the only company boss appellee knew of; that after working hours each day appellee's time belonged to himself and he would go about any personal matters he pleased; that on the day of his injury his working day began at 8:00 A.M. o'clock and ended at 6 P.M. o'clock and his hourly pay for that day ended at 6:00 P.M. o'clock; that he was injured at 7:30 P.M. o'clock which was one and one-half hours after his work day ended; that he voluntarily lived in a small three-room house made out of a box car on his employer's premises for which his employer charged him a monthly rental of $5, which sum was deducted monthly from his pay check; that his rental contract for living quarters provided that he be furnished the place to live for the rental paid but nothing was said about what the rental premises would include; that he was not required to live on his employer's premises, but other employees also lived there and he found it cheaper than living in town or elsewhere; that he was required to keep the premises in good order, as a result of which he had improved the house at times and used materials furnished by his employer when such were needed; that any improvements he put there became permanent improvements; that the electric current furnished by his employer was too weak to satisfactorily care for the use of his family Frigidaire and the air conditioner, for which reason he planned to get the transformer and connect it on to his electric current to improve the service for his home; that earlier on the day of his injury, Charlie Pulliam asked him if he wanted to go along with him to get the transformer and he agreed to go with Pulliam; that after working hours were over that day, he went along with Pulliam and Lowery to get the transformer at the old gravel pit where he was injured; that neither Pulliam or Lowery was a boss or had any authority over him; that before going after the transformer he did not have permission of his boss, Bernie McHargue, to go get the transformer nor did he know of any one else who had discussed the transformer with Mr. McHargue; that he (the witness) did not then know who owned the transformer and never thereafter learned who owned it; that Texas Sand and Gravel

Company did not own the electrical equipment included in its lease; that the transformer in question was located in an old gravel pit which the Texas Sand and Gravel Company was not using but had abandoned altogether about four months previous to the date of his injury.

Appellee also offered in support of his claims the testimony by deposition of his fellow employee, Charlie Pulliam, who was also a truck driver for the same employer, was paid on an hourly basis and whose testimony corroborated in the main that given by appellee. Pulliam testified in effect that he and his family also lived in a small house on his employer's premises near the gravel pit where he worked for which he paid his employer a nominal rental of $5 per month; that he was not required to live on his employer's premises but voluntarily lived there because rent was cheaper and he was closer to his job; that on the day of appellee's injury the day's work for the witness was over at 6:00 P.M. o'clock and his hourly pay for his day's work ended at 6:00 P.M. o'clock; that he and appellee had worked together for the same employer for several years; that the Texas Sand and Gravel Company did not own the land where the employees lived and where the gravel pit was being worked but his employer merely leased the premises and had control over the same while using such; that Bernie McHargue was superintendent and in charge of the work he was doing; that he (the witness) was present when appellee was injured at the old Tascosa plant or gravel pit where they once worked eight miles west of where they lived and were then working another gravel pit; that they had torn down the old Tascosa plant three or four months previously and moved it to the new location where they were then working; that the transformer left at the old gravel pit was supposed "to have been a dead line;" that he and Lowery went with appellee to get the said transformer in the car owned by the witness, which car was not used by him in connection with his job with his employer; that on July 14, 1955, before going to get the transformer, the witness asked his boss, Bernie McHargue, for permission to go get the transformer but McHargue said he was not sure who owned the transformer and did not authorize the witness to go get the transformer, however, the witness testified further that McHargue told him he thought it would be all right to go get the transformer but the witness did not tell McHargue that they were going to get the transformer that evening or at any other time; that he had never tried to remove a transformer before.

Robert Lowery did not testify but the record reveals that he was a fellow employee doing the same type of work that appellee and Pulliam were doing.

■ The early case of Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S.W. 72, 73, 28 A.L.R. 1402, presented a similar question to the one presented here but the court there held that the deceased, although returning from lunch at the noon hour when killed by a moving train, was in fact on premises so closely connected with his own labor and at a place danger was often so eminent that it could hardly be said he was not on the premises of his employer where he was then engaged in or about the furtherance of his employer's business, for which reason recovery was allowed to his survivors. However, the court there pronounced rules of law that we think are pertinent here, in this language:

> "An injury has to do with, and arises out of, the work or business of the employer, when it results from a risk or hazard which is necessarily or ordinarily or reasonably inherent in or incident to the conduct of such work or business. As tersely put by the Supreme Court of Iowa: 'What the law intends is to protect the employee against the risk or hazard taken in order to perform the master's task.'— Pace v. Appanoose County, 184 Iowa 498, 168 N.W. 918."

Thereafter in the case of Smith v. Texas Employers' Ins. Ass'n, 129 Tex. 573, 105 S.W.2d 192, 194, the Commission of Appeals, in an opinion approved by the Supreme Court, denied recovery in a case similar in some respects to the Behnken case just previously cited. The court there said in part:

"It appears to be the settled rule that even though the contract of employment contemplates that the employee, while engaged generally in the performance of his duties, may be subjected to the perils and hazards of the streets and highways, nevertheless in order that an injury resulting from the risks of the streets may be compensable, the employee, at the time of the injury, must be actually engaged in the performance of some particular duty of his employment, or must be upon some substantial mission of his employer in the course of his employment, which subjects him to such perils."

In the case of Safety Casualty Co. v. Wright, 138 Tex. 492, 160 S.W.2d 238, 245, an employee was a pipe line walker for his employer. After having walked a part of the line on a given day he boarded a public bus to ride to another point to continue further pipe line walking for the day. He usually rode on the said bus to connect up his daily work with the knowledge and approval of his employer. While riding on the said bus and between his two points of work, the bus caught on fire while the said employee was underneath the bus trying to help repair it so he could get back on his employer's job and as a result of the fire the said employee burned to death, consequently in a suit filed, his surviving widow sought compensation. The trial court and the court of civil appeals sustained her claim but the Supreme Court reversed it, saying in part:

"After a careful consideration of the question, we are compelled to the conclusion that, notwithstanding the fact that we still hold that Valentine C. Wright was in the course of his employment with Magnolia Pipe Line Company while a passenger of this bus, still it would be unreasonable, under the facts of this record, to say that he was in the course of such employment while under such bus for the purpose of making repairs thereon, either of his own volition, or at the request of the bus driver. Certainly at such time he had turned aside from the course of his employment with the Pipe Line Company, and was in the course of performing services for the bus owner or its driver. Texas Employers' Ins. Ass'n v. Bailey, Tex.Civ.App., 266 S. W. 192, writ refused; Aetna Life Ins. Co. v. Burnett, Tex.Com.App., 283 S. W. 783; Aetna Life Ins. Co. v. Matthews, Tex.Civ.App., 47 S.W.2d 667, writ refused. Ocean Accident & Guaranty Corp. v. Riggins, Tex.Civ. App., 291 S.W. 276, writ refused. Langford v. El Paso Baking Co., Tex. Civ.App., 1 S.W.2d 476, writ dismissed."

In the case of Kimbrough v. Indemnity Ins. Co. of North America, Tex.Civ.App., 168 S.W.2d 708, 709 (writ refused) the employee reported for usual work for his employer but then turned aside to engage in other work with the knowledge and approval of one of his employer's foremen, who sent another employee to help him, as a result of which joint efforts of the two, the first employee mentioned was injured. In his suit for compensation the said first employee mentioned contended he was engaged in the furtherance of his employer's business on his employer's premises during working hours but the court denied him recovery. The court there said in part:

"In order to recover benefits under the Workmen's Compensation Act of the State of Texas, an employee must prove not only that his injury occurred while he was engaged in or about the furtherance of the affairs or business

of his employer, but also that the injury was of such kind and character as had to do with and originated in the work, trade, business or profession of the master. Not every injury which occurs at or near the place of employment is compensable. The injury must be brought about by a risk which is incidental to and arises out of the task the workman has to do in fulfilling his contract for service, and to which the employee would not be subjected but for the employment contract for service. * * * Our courts have uniformly held that, where the evidence shows that at the time of an injury to an employee, the employee is engaged in doing or attempting to do something not required of him by his contract of employment, he is not engaged in his master's business but in an enterprise of his own and that the injuries received are not compensable under the Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq."

In the case of Texas Indemnity Ins. Co. v. Cheely, Tex.Civ.App., 232 S.W.2d 124, 126 (writ refused) this court denied recovery of compensation where an employee turned away from the work he was employed to do while on duty to engage in other matters yet claimed compensation. This court there said in part:

"Moreover, it is now well settled that, in order to recover compensation under the provisions of our workmen's compensation law, proof that the injury occurred while the employee was engaged in or about the furtherance of his employer's affairs or business is not alone sufficient. He must also show that his injury was of such kind and character as had to do with and originated in the employer's work, trade, business or profession. Aetna Life Ins. Co. v. Burnett, Tex.Com.App., 283 S.W. 783; Richardson v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 46 S.W.2d 439; Erwin v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 63 S.W.

2d 1076; New Amsterdam Casualty Co. v. Collins, Tex.Civ.App., 289 S.W. 701; Texas Employers' Ins. Ass'n v. Bailey, Tex.Civ.App., 266 S.W. 192."

In submitting the special issue inquiring if appellee was injured while engaged within the course of his employment the trial court submitted the following instructions in connection therewith:

"You are instructed that the term 'Injury sustained in the course of his employment' includes all injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer, whether upon the employer's premises or elsewhere.

"An injury is sustained in the course of employment only if it originates in the work, business, trade or profession of the employer; and it originates in the work, business, trade or profession of the employer only if it results from the doing of that which the employee is employed to do."

In analyzing the testimony in the light of appellee's claims for compensation benefits while allegedly engaged within the course of his employment, we find that the testimony of appellee and his witness Pulliam conclusively establishes that appellee received his injury in question at a time when he, along with two other fellow employees, voluntarily went, after his working day for his employer was over, to an old gravel pit previously abandoned by his employer, for the purpose of getting an old transformer that was supposed to have been connected up with a dead line, without the knowledge or consent of his employer that he was going on such a mission and without either himself or his employer knowing who owned the said transformer, but getting it for the purpose of taking it to connect up with the electrical system already provided for and in operation in

appellee's rented home in order to give appellee a stronger electrical current for more satisfactory electric service for the use of himself and his family in their home. While so doing appellee accidentally contacted a live electric wire while trying to get the transformer at the old abandoned gravel pit as a result of which he was injured.

■ In our opinion appellee's acts voluntarily performed in connection with getting the said transformer, after his working hours were over and without the knowledge or consent of his employer and without either himself or his employer knowing who owned the transformer, to be used for his own personal use, did not arise out of or originate in the work, business, or trade or profession of his employer and such acts were not performed and he was not injured while he was engaged in or about the furtherance of the affairs or business of his employer, as was required under the law as given in charge by the trial court and as the same has been construed by the Texas Supreme Court before recovery of disability benefits in such a case can be had. Considering the evidence in a light most favorable to appellee's claims, it does not tend to show that appellee was by his acts at the time and place of receiving his injury performing any service for the benefit of his employer. In any event appellee's injury was not caused by a risk incidental to or arising out of the task or work he was required to do in fulfilling his contract for services to his employer. The acts being performed by appellee when he was injured were not required of him as a part of his employment. Such acts were performed by appellee without the consent or knowledge of his employer and were not performed during his working hours or for pay by his employer. They were voluntarily performed at an old gravel pit previously abandoned by his employer. The ownership of the transformer not being known to appellee or his employer, it is hardly reasonable to presume that it would have been beneficial to his employer **to**

have the transformer owned by some one else connected up with the electrical facilities in appellee's rent house, but it is reasonable to presume from appellee's testimony that he planned to so connect the transformer up at his home in order to get better service and more comfort for himself and his family.

Under the facts presented and the rules of law governing such it is our opinion that appellee failed as a matter of law to establish his claim for compensation. He was not on a mission required by his employment but he was on a mission for his own personal benefit. It is our opinion further that the evidence given by appellee and his witness, Pulliam, establishes conclusively that the accident which resulted in appellee's injury did not oroiginate from a risk or hazard of his employment and that appellee was not on a mission on the occasion in question connected with or required by his contract of employment in such a way that he could have been reasonably calculated to have been then engaged in or about the furtherance of the affairs or business of his employer, for which reason he is not entitled as a matter of law to recover compensation. Other authorities in support of our conclusion are: American General Ins. Co. v. Williams, 149 Tex. 1, 227 S.W.2d 788; Texas Employers' Ins. Ass'n v. Sparrow, 134 Tex. 352, 133 S.W.2d 126; Texas Employers' Ins. Ass'n v. Grammar, Tex.Civ.App., 157 S.W.2d 701; Texas Indemnity Ins. Co. v. Clark, 125 Tex. 96, 81 S.W.2d 67; McKim v. Commercial Standard Ins. Co., Tex.Civ.App., 179 S.W. 2d 357 (writ refused); Graves v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 197 S.W.2d 596; Loyd v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 280 S.W.2d 955 (writ refused); Great American Indemnity Co. v. Kingsbery, Tex.Civ.App., 201 S.W.2d 611; Employers Reinsurance Corporation v. Brooks, Tex.Civ.App., 165 S.W.2d 785 (writ refused).

Appellee has presented and relies on several cases that have different factual situations and in our opinion are not appli-

cable and certainly not controlling in the case at bar in any event. He first relies upon the case of Texas Employers' Ins. Ass'n v. Davidson, Tex.Civ.App., 295 S.W. 2d 482. In that case Mrs. Davidson ate her lunch on the occasion in question at her place of employment with permission of her employer. She was directed to put the waste from her lunch in a barrel in the room furnished by her employer. While doing that she stepped on a piece of paper on the floor, slipped, fell and injured herself. The paper she stepped on came from the binding of materials which had been brought to the room to be used by the employees in their work. In that case the court held that the well recognized rule to the effect that the service tie or contractual relations and obligations between master and servant were not broken by the suspension of all activities during the noon intermission for lunch sufficiently to hold that such was not directly beneficial to the employer. The question there presented was whether or not the employer-employee relationship was sufficiently interrupted under the circumstances to prevent recovery and the court held it was not.

Appellee then cites the case of American Mutual Liability Ins. Co. v. Parker, Tex. Civ.App., 188 S.W.2d 1006, affirmed 144 Tex. 453, 191 S.W.2d 844, 846. There the deceased had been a regular employee who hauled other employees to and from work. Upon his arrival on the day of his injury, hauling his riders, he was personally denied the right to work because his shoes were not equipped with safety heels, and he drove to Texarkana to have safety heels put on his shoes. Upon his return to his employer's premises to pick up and haul other employees home, he was admitted upon the premises because he was an employee equipped for work. Upon driving across the premises to pick up the other employees, his car was hit by a train at a railway crossing on his employer's premises used only by the employees where he was killed on his employer's premises as a result of a hazard to which his employment daily exposed him. As a result of these facts, the Supreme Court held that: "In traveling across the premises of his employer to pick up the riders at the end of their shift, he was working in the interest of his employer," when he was killed, for which reason compensation was allowed his survivors.

Another case appellee relies upon also presents sound rules of law but in our opinion such are not applicable to the facts in the case at bar. That is the case of Liberty Mutual Ins. Co. v. Nelson, 142 Tex. 370, 178 S.W.2d 514, 515. The deceased there had been a painter foreman as well as a painter for his employers and had authority from them to employ other helpers and to purchase the needed supplies for his employers' work. On the occasion of his death by accident as a result of an automobile collision on a public street in Houston, Texas, he was then on his way, with the approval of his employers, to procure painting supplies for his employers' work. As a result of such facts the court held that the deceased "was on a mission pertaining to his employers' business, in furtherance thereof and for their benefit," for which reason a claim for compensation was sustained.

Appellee cites other authorities of the same or similar import with which we find no fault but do not think they apply to the case at bar. Under the facts in those cases there existed either a knowledge with approval by the employer of the acts of employee which resulted in injury or there existed an employer-employee relationship sufficiently binding to justify the award of compensation, neither of which exist in our opinion in the case at bar. No showing was made in those cases to the effect that the employee could have been on a personal mission when injured as in our opinion was shown to be true in the case at bar.

For the reasons shown it is our opinion that the trial court should have sustained

appellant's motion for a peremptory instruction or for judgment non obstante veredicto and rendered judgment accordingly.

 Appellant further charges that testimony was erroneously admitted concerning acts of both appellee and Pulliam, another fellow employee, on other and different occasions involving other collateral facts and different transactions which occurred at other times and were not relevant to the material facts here in issue. It has been held that similar acts of a party to those in issue and acts performed at some other time should not be admitted in evidence unless such are relevant to the facts in issue in the case on trial and tend to prove or disprove those facts in issue. Dallas Ry. & Terminal Co. v. Farnsworth, 148 Tex. 584, 227 S.W.2d 1017. Under the rule of law cited, it is our opinion that the testimony of appellee tending to show that he, with the approval of his employer who furnished him materials when needed, engaged in work repairing his rented house at other and different times than on the occasion of his injury should not have been admitted as relevant testimony in support of the material facts showing conclusively that appellee was injured on a different occasion and on a different day when he voluntarily went without the knowledge or consent of his employer to get a transformer, the ownership of which was not known to either himself or his employer, to be used for his own personal benefit and not for the benefit of his employer. In our opinion such testimony concerning other acts of appellee at other times and on other occasions should have been excluded because it did not tend to prove or disprove the material issue in the case, that is, whether or not appellee was engaged within the course of his employment on a different date and at a different time when he was injured and such testimony was not therefore relevant. Certainly the testimony of Pulliam concerning acts he performed in improving his rented house on a different occasion and at a different time

other than the day appellee was injured was wholly foreign and had no relevant connection with the issue of whether or not appellee was acting within the course of his employment on the day of his injury and should have been excluded. The testimony of Pulliam concerning his own separate personal acts on other occasions certainly could not have had any probative force in an attempt to prove or disprove whether or not appellee was engaged within the course of his employment when injured. Pulliam's testimony concerning the facts about the trip he, appellee and Lowery made on the occasion of appellee's injury was admissible, but the testimony about other acts of his performed on other occasions was foreign to the salient facts of this case and was not admissible.

Appellant further charges errors were committed by appellee's counsel being permitted to make prejudicial argument to the jury and by the refusal of the trial court to submit its special requested issues concerning the controlling question in the case, but in our opinion these charges are now immaterial because of our disposition made of other matters.

As a result of a careful examination of the record and the briefs, it is our opinion that there was no competent evidence to support the jury finding to the effect that appellee was injured while engaged in the course of his employment. In any event we find the evidence was insufficient to support such a jury finding and the finding of the jury was by all means contrary to the overwhelming weight and preponderance of the evidence heard. Appellant's Points 1 and 2 complaining about these matters must be sustained. Our actions in sustaining these two points make disposition of the case, however, appellant's Points 3, 4 and 5 complaining about the wrongful admission of testimony concerning acts performed by appellee and Pulliam at other and different times are well taken, although not necessary to a proper disposition of this case.

**136**

For the reasons stated the judgment of the trial court is reversed and judgment is here rendered denying appellee, Raymond Blessen, any recovery as against appellant, Texas Employers' Insurance Association.

Reversed and rendered.