**RANGER INSURANCE COMPANY, Appellant,**

v.

**Beatrice VALERIO, Individually and as next friend of Corina Yvette Valerio, a minor, Appellee.**

**No. 6578.**

Court of Civil Appeals of Texas, El Paso, Texas.

July 6, 1977.

Rassman, Gunter & Boldrick, James P. Boldrick, Midland, for appellant.

Bobby R. Bearden, Edward T. Garza, Don E. Williams, Midland, for appellee.

## OPINION

WARD, Justice.

This is a workmen's compensation death case. Judgment was entered for the claimant-widow based on the one issue submitted to the jury which found that the accidental injury was received by the deceased in the course of his employment. The appellate points are those that challenge the legal sufficiency of the evidence to support the finding and assert that, as a matter of law, the deceased, Esteban Valerio, at the time of injury was on a purely personal mission. We will deny the recovery and reverse and render.

The parties stipulated to the controlling facts except those relating to the one question submitted. While those facts are almost without dispute, they and the inferences arising therefrom will be viewed in the light most favorable to support the jury finding because of the law points attacking that finding.

Viewing the evidence most favorable to the finding, we see that Esteban Valerio,

Alfonso Calvio, and Robert Oaks were employed by Earl Newcomer who did business as Newcomer Butane & Oil. The principal business was that of delivering butane and butane tanks to the farms and residences in Martin County. One farmer had transferred his account and on the afternoon of May 16, 1973, the three employees were directed to pick up the butane tanks from that farm and return them to the company yard. There were some ten or more 500-gallon tanks at the farm, and Valerio and the two fellow employees were sent in two separate trucks to perform the task. Each truck had a trailer attached which carried a hoist. When they arrived at the farm, Valerio wrenched up and secured one tank to his trailer, then parked his truck and was helping his two fellow employees load a tank onto the other trailer. ·Oaks moved the truck he was driving to a point where the trailer would straddle the tank, and he and Calvio then hand-cranked the tank up onto the trailer. In the process, a rabbit came out from under the tank and ran into an irrigation pipe which was stacked with other pipes some 40 or 50 yards from the truck. When the tank had been lifted, Valerio helped secure the tank and completed that particular task. While Oaks was parking his truck next to the other one, Valerio and Calvio went over to the pipe to get the rabbit. They lifted the irrigation pipe, which was some 30 or 40 feet long, and in the process the pipe came in contact with an overhead power line and Valerio was electrocuted. The three men at the scene were of equal employment status and there was no boss at the job, although Oaks testified that he had called to the two men while they were after the rabbit to stop what they were doing and to proceed with the work at hand.

Mr. Newcomer knew that his employees took coffee breaks when they desired and consented to the practice, although no specific times were assigned for the breaks. He testified that the employees had never been permitted nor instructed to move any irrigation pipe, nor had they any business hunting rabbits on company time, and it

would not have helped the employer in any way for any employee to shake a rabbit out of an irrigation pipe.

The phrase "injury sustained in the course of employment" is defined in Tex.Rev.Civ.Stat.Ann. art. 8309, Sec. 1, and specifically excludes certain injuries not material here but includes:

" * * * all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere."

As often stated, the requirements of the Statute are not satisfied by proof that injury occurred while a workman was engaged in or about the furtherance of his employer's affairs or business. The claimant must also establish that the injury was of a kind and character that had to do with and originated in the employer's work, business, trade or profession. *Shelton v. Standard Insurance Company*, 389 S.W.2d 290 (Tex. 1965). Thus, coverage under the compensation law ceases during deviations by the employee from the course and scope of his employment and injury sustained during a deviation is not compensable. *Texas Employers' Insurance Association v. Blessen*, 308 S.W.2d 127 (Tex.Civ.App.—Amarillo 1957, writ ref'd n.r.e.); 62 Tex.Jur.2d Workmen's Compensation, Sec. 72 at p. 627 (1965).

Appellee's position is that here the employee was actually on the job; the employer knew and condoned the coffee breaks and therefore could reasonably anticipate some small form of innocent relaxation on the part of the employee during the period of the working day; and that the small deviation, both in time and space, from the course and scope of employment should not cause the employee or his beneficiary to lose the protection of the compensation act. A slight deviation and the common habits of most people were condoned in *Texas General Indemnity Company v. Luce*, 491 S.W.2d 767 (Tex.Civ.App.—Beaumont 1973, writ ref'd n.r.e.). There, the cafeteria employee was required to return to the place of business to get her paycheck while she was on vacation, and after being paid, then deviated to the extent of walking behind the serving line to greet fellow employees. There she was injured and that simple deviation was held not to remove her from coverage.

Similar reasoning was applied to a personal-assault-type of case by the same Court in *St. Paul Insurance Company v. Van Hook*, 533 S.W.2d 472 (Tex.Civ.App.—Beaumont 1976, no writ). There, the 17-year old claimant-janitor attempted to protect his employer's property from rock throwers. Although the ensuing fight occurred at a nearby boxing ring instead of at the scene, the slight departure did not prohibit the recovery of compensation.

Appellee further points out that the deceased and his fellow worker were on the job waiting to go to the next tank while Oaks completed his task of driving his truck to the other truck. The Appellee compares these facts to a case where it was stressed that the employee was in readiness and merely waiting. *Millers Mutual Fire Insurance Company of Texas v. Monroe*, 495 S.W.2d 625 (Tex.Civ.App.—Waco 1973, writ ref'd n.r.e.). There, the manual laborer had completed a task and was waiting for freight cars to be positioned when he sat on his shovel, fell off the shovel, and struck his head on the floor. At that time, he was required to hold himself in readiness for work and to be ready, able and available to perform whatever duties he might be called upon to perform. The Court pointed out that to hold that the injury did not originate in the work or did not occur when he had been acting in furtherance of the business of the employer would be to give a strict interpretation to the workmen's compensation law contrary to the direction that it be liberally construed.

Somewhat similar was the pumper who lived on the isolated lease and who was hired to keep the engine on the well and the pumping operations going twenty-four hours a day. In that assault-type case

which resulted in the brutal murder of the pumper, the employee was held not to forfeit the claim for compensation where he embarked on what he thought would be a wolf hunt which would be held within hearing distance of the pump and where he could at all times determine if the engine was still performing. *Southern Surety Co. v. Shook,* 44 S.W.2d 425 (Tex.Civ.App.—Eastland 1931, writ ref'd).

In the last case it was pointed out that when a man is employed to work at any job, the fact that he is a human with ordinary human habits and requirements is necessarily taken into consideration. That being the case and considering the behavior of Valerio as being a natural impulsive act under the circumstances, the issue then to be determined is how far could he have gone in chasing his rabbit? At what point does the deviation become so distinct that he can be considered to have left his employment and the coverage?

In the travelling-man-type of case, the rule has been liberalized to the extent that it is considered that the injury arose in the course of the employment when the injury had its origin in a risk created by the necessity of sleeping or eating away from home. Even there, the coverage ceases upon a showing of a distinct departure on a personal errand of the employee not connected with the necessity of sleeping or eating. *Shelton v. Standard Insurance Company,* supra. When a departure upon a personal errand is shown which was not contemplated by the employment, the exclusion has been strictly applied. Thus, coverage was denied in *Walker v. Texas Employers' Insurance Association,* 443 S.W.2d 429 (Tex. Civ.App.—Fort Worth 1969, writ ref'd). There, the travelling man late at night decided to go to the motel room of a stranger for a shot of liquor but instead received a shot in his back. In *Hardware Mutual Casualty Company v. McDonald,* 502 S.W.2d 602 (Tex.Civ.App.—San Antonio 1973, writ ref'd n.r.e.), recovery was denied where the travelling salesman late at night on a personal mission drove down to the river and was drowned where the mission had nothing to do with the furtherance of his employer's business. ·

After reviewing the authorities, we feel that we are governed by the deviation rule as was applied in *Roberts v. Texas Employers' Insurance Association,* 461 S.W.2d 429 (Tex.Civ.App.—Waco 1970), where the writ of error was marked "refused." There, the Court, after expressly stating that the incident occurred on the employer's premises during working hours, held against coverage where the employee took a pasteboard box she had obtained for her own use to her car, which was parked on the company parking lot, and there sustained an injury. She testified that the purpose for which she wanted the box was purely personal, and the injury was held not compensable.

Here, the risk to which Valerio subjected himself when he raised the irrigation pipe to get the rabbit and touched the power line was foreign to anything that had to do with his employment in picking up butane tanks. The origin of the harm was clearly personal to him and could not be attributed to the employment, even though it occurred when he was on the job. The positional risk doctrine is of no aid to the claimant as no "neutral force" or unexplained occurrence was involved. See Larson, "The Positional-Risk Doctrine and Workmen's Compensation Laws," 1973 Duke L.J. 761.

The Appellant's points are sustained. The judgment for the Plaintiff is reversed and judgment is here rendered that the Plaintiff take nothing by her suit.