**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

v.

**Ruth Burns DEAN, Appellee.**

**No. 6925.**

Court of Civil Appeals of Texas, El Paso.

July 16, 1980.

Diamond, Rash, Anderson, Leslie & Smith, Charles E. Anderson, El Paso, for appellant.

Malcolm McGregor, Philip T. Cole, El Paso, for appellee.

## OPINION

WARD, Justice.

In this worker's compensation case, the main issue is whether the injuries were sustained in the course of the employment. The employee was on her employer's parking lot, going to her car at night after her work, and was injured by a purse snatcher. Trial was to a jury, which determined that the injury was received in the course of the employment. We affirm the judgment which was entered for the employee.

All of the facts were established by the Plaintiff and a witness called by her. The claimant, Ruth Burns Dean, age 63, was employed as a cashier and supervisor at a large K–Mart on North Mesa in El Paso. She worked a regular 8–hour shift, and her duties consisted of operating a check–out counter, as well as supervising and checking out the other cashiers at the end of her work day, and then turning in all cash receipts to the manager's office located at the rear of the store. On October 14, 1976, Mrs. Dean was working the last shift which ended at 10:00 p. m. She then checked out, turned in all of the cash receipts, punched the time clock card, picked up her purse and left by the front of the store at about 10:30 p. m., intending to go to her car. She

parked her car on the large company parking lot in the specific area designated for use by employees. This was toward one side of the parking lot near a side street. About half of the parking lot lights had been turned off by that time of night, in the interest of economy. After she left the store, she walked a short distance when she was struck in the head by an assailant, and she fell to the pavement in an unconscious state. A witness, Alfredo Macias, testified that he left the store shortly before the claimant, and he noticed a tall man with a pony–tail leaning against the front of the store. The man looked "mean" at the witness, and the witness hurried on to his car. He was putting the purchases he had made in the trunk of his car when he saw the man he had described run toward the claimant, hit her, and go for the purse that she was carrying. Mrs. Dean fell, and the assailant continued to run to a car where another man was waiting, and the two drove off at a high rate of speed. The witness went to the claimant, he saw that she was bleeding, and, when he turned her over, he saw she was still clutching her purse. Some time later, the assailant was identified by both Mrs. Dean and Mr. Macias when his picture appeared in the obituary column of the local paper. When Mrs. Dean saw his picture, she went to the mortuary and identified him as her assailant. She testified that he was often in the store; she had checked him out on previous occasions. She stated that he had been in the store the very night of the attack and had passed through her line, and she noticed that he stared at the money in her cash register when it was opened. The front of the store was located near the cash registers, and there were large plate glass windows all across the front of the store. When Macias saw the assailant, he was standing by these windows at the front of the store. At the time of the attack, Mrs. Dean was wearing her distinctive K–Mart jacket. The attack happened on Thursday night, and it was the one night of the week when the security guard employed by K–Mart was off duty.

Essentially, the insurance carrier's third and fifth points are that there was no evidence to support either the submission or the finding by the jury that the Plaintiff was injured in the course of her employment, the carrier arguing: (1) that, under the undisputed evidence, Mrs. Dean was off work at the time of her injury and her injury was suffered only as a consequence of risk and hazard to which all members of the public are subjected, rather than a hazard having to do with and originating in the work or business of her employer; and (2) she was not injured as a result of her work environment, as the assault was directed to her for personal reasons only and purely as a member of the public and not because of her presence on the K–Mart parking lot as an employee.

■ The following instructions were given in connection with the offending issue:

'INJURY IN THE COURSE OF EMPLOYMENT' means any injury having to do with and originating in the work, business, trade or profession of the employer, received by an employee while engaged in or about the furtherance of the affairs or business of his employer, whether upon the employer's premises or elsewhere.

'If an employee is injured while passing to or from work over the employer's premises, the injury is one arising out of and in the course of employment as much as though it had happened in her work at the place of its performance.'

'An injury is not in the course of employment if it is caused by the act of another person intended to injure the employee because of reasons personal to the employee and not directed against her as an employee or because of the employment.'

'In connection with the above you are further instructed that if an employee is assaulted on the premises of the employer where the environment contributed to the risk and where she would not have been assaulted except for her presence on such premises, any injuries sustained by the employee are sustained in the course of employment.'

The carrier's first two points attack the second and fourth paragraphs, asserting that there is no evidence to support the submission of those instructions. Since all of the first four points are essentially "no evidence" points, we will consider only the evidence and inferences based thereon which are favorable to the instructions and the findings, and we will disregard the evidence and inferences that are unfavorable. In this connection, we first note that the first paragraph of the instruction is in terms required by Section 1 of Article 8309, Tex.Rev.Civ.Stat.Ann. (1967). "Course of employment" requires the employee to meet two prerequisites: (1) the injury must have occurred while the employee was engaged in or about the furtherance of his employer's business; and (2) the injury must have been of a kind and character having to do with and originating in the employer's business. *Shelton v. Standard Insurance Company*, 389 S.W.2d 290 (Tex.1965). Thus, the general rule is to the effect that the benefits of the Workers' Compensation Act do not apply to injuries received while going to and from work. However, the on–premises rule, and its extension into the access doctrine, is the well settled exception to the general rule. Under the exception, the employee is deemed to be in the course of employment if the injury occurs within a reasonable margin of time necessary for passing to and from the place of work both before and after the actual working hours of service, and if it occurs at a place intended by the employer for use by the employee in passing to and from the actual place of service on premises owned or controlled by the employer, or so closely related to the employer's premises as to be fairly treated as a part thereof. *Lumberman's Reciprocal Association v. Behnken*, 112 Tex. 103, 246 S.W. 72 (1922); *Texas Compensation Insurance Company v. Matthews,* 519 S.W.2d 630 (Tex.1974); *Kelty v. Travelers Insurance Company*, 391 S.W.2d 558 (Tex.Civ.App.—Dallas 1965, writ ref'd n. r. e.). When the accident occurs on the parking lot owned by the employer, and at the place of employment where the employee is either going to or from work and where the employee is authorized to park, the rule is almost universal that compensation coverage attaches to the same extent as if the injury occurred on the main premises. Larson, The Law of Workmen's Compensation sec. 15.41 (1978). Larson states that Texas may be a possible exception to this rule by citing as one of its authorities *Roberts v. Texas Employers' Insurance Association*, 461 S.W.2d 429 (Tex. Civ.App.—Waco 1970, writ ref'd). We viewed the *Roberts* case as being one which strictly applied the deviation rule, *Ranger Insurance Company v. Valerio*, 553 S.W.2d 682 (Tex.Civ.App.—El Paso 1977, no writ), while the employer's parking lot was correctly stated to be within the coverage of the Workmen's Compensation Act in *Aetna Life Insurance Company v. Woods*, 449 S.W.2d 86 (Tex.Civ.App.—Fort Worth 1969, writ ref'd n. r. e.). That case assumed "an upside down form," where the injured employee was trying to prove that the Act did not apply, as the employee was trying to recover under a group policy whose coverage provided an exclusion if the insured was entitled to benefits under the Workmen's Compensation Law. We believe this last authority, and the cases relied on therein, set out the rule in this State that coverage does apply to the company parking lot as a "premise exception" to the "going to and from work" rule.

What we have stated so far is only to emphasize that the injury was received within the reasonable time period and in the area where coverage usually extends. It does not end the matter, as the injury was caused by the attempted purse snatcher. Section 1 of Article 8309, Tex.Rev.Civ. Stat.Ann., declares that an injury is not sustained in the course of employment and is not compensable if it is "caused by an act of a third person intended to injure the employee because of reasons personal to him and not directed against him as an employee, or because of his employment." This intentional injury exclusion was first considered in *Vivier v. Lumbermen's Indemnity Exchange*, 250 S.W. 417 (Tex.Com. 1923). There, a night watchman was killed while on duty on his employer's premises,

and the argument was made that the injury was not sustained in the course of employment because the employee's death resulted from an assault by an outsider whose motive was robbery of the employee. The Commission of Appeals held the exclusion was applicable only where there existed in the mind of the assailant a preexisting malice causing the assailant to follow the employee and inflict injury upon him wherever he was to be found, or where the employee by his own initiative provoked the difficulty which caused the other party to feel a personal interest in assaulting him. The Court held that coverage applied as the employee was placed in the position where his environment contributed to his risk, and he would not have been killed but for his presence at the place in the performance of such duties.

This "positional risk" test was followed in *Commercial Standard Insurance Company v. Marin*, 488 S.W.2d 861 (Tex.Civ.App.—San Antonio 1972, writ ref'd n. r. e.). There, the Court afforded coverage where the service station employee was raped and murdered in the darkness of the early morning hours as she was in the process of opening her employer's service station for business. The Court stated the following at 869:

> It is well settled that if an injury is received by an employee while he is acting within the course of his employment, and such injury is the result of a risk or hazard of the employment, it is compensable. . . . With specific reference to assaults this well settled doctrine, at the very least, means . . . that an assault arises out of the employment if the risk of assault is increased because of the nature of the work, or if the reason for the assault is a quarrel having its origin in the work.

See: *Southern Surety Co. v. Shook*, 44 S.W.2d 425 (Tex.Civ.App.—Eastland 1931, writ ref'd).

■ Here, the conditions of Mrs. Dean's employment increased the risk of a personal attack and subjected her to a danger incidental to her employment. She was walking in the partially darkened parking area while wearing a K–Mart jacket. She was assaulted by a man who had just been in the store, who had registered interest in the money in her drawer, and who waited for her in order to grab her purse and make his getaway. We hold that the course of employment finding, and the submission of the instructions in connection therewith, were supported by legally sufficient evidence. We also reject any argument that, as a matter of law, the injury resulted from the act of the assailant because of reasons personal to him. See: *Highlands Underwriters Insurance Company v. McGrath*, 485 S.W.2d 593 (Tex.Civ.App.—El Paso 1972, no writ). The four points under discussion are overruled.

■ Point IV is to the effect that paragraphs two and four constituted an impermissible comment on the weight of the evidence. While the first instruction contained in paragraph two is erroneous, we do not agree that they are subject to the specific objections made to them. To constitute a comment on the weight of the evidence, the instruction must be worded so as to indicate an opinion by the trial judge as to the verity or accuracy of the facts inquired about. These instructions do not assume the nature of the answer. *McDonald Transit, Inc. v. Moore*, 565 S.W.2d 43 (Tex.1978); *Metal Structures Corporation v. Plains Textile, Inc.*, 470 S.W.2d 93, 102 (Tex.Civ.App.—Amarillo 1971, writ ref'd n. r. e.). As presented, the point is overruled.

The last point complains of the exclusion of testimony by Mrs. Dean's husband relating to an impression on his part that she held him responsible for the attack. As developed on voir dire, the husband obtained this impression from a letter written by Mrs. Dean's sister. We find no error in the trial Court rejecting the conclusion which was based on the hearsay conclusionary statement of the sister, and the point is overruled.

The judgment of the trial Court is affirmed.